## City of Shelbyville et al. v. Citizens Bank of Shelbyville.

(Decided Feb. 1, 1938.)

WILLIAM H. HAYS for appellant.

TODD & BEARD for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

An ordinance of the city of Shelbyville, a city of the fourth class, imposed a license tax of $50 a year on "each bank and trust company combined and engaged in business under the same management." On each bank not conducted in connection with a trust company and on each trust company not conducted in connection with a bank the tax is $30. There are five state banks in Shelbyville. The appellee, Citizens Bank of Shelbyville, brought this action to enjoin the collection of the license tax. It alleged in its petition that the ordinance levying the tax violated sections 171 and 202 of the Kentucky Constitution and the Fourteenth Amendment to the Federal Constitution, and was void. A demurrer to the petition was overruled, and, after the defendant declined to plead further, a judgment was entered enjoining and restraining it from collecting the tax. The city appeals.

It is conceded that the city cannot collect a license tax from a national bank. That neither a state nor a subdivision thereof can impose a license or franchise tax on a national bank is firmly established by decisions of the Supreme Court of the United States. In McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, it was held

that a state had no power to tax the business of a branch of the bank of the United States located within its limits. National banks were first established by Congress in 1864, and by an act passed in 1868, Congress granted a qualified permission to the states to tax them. This act, with slight changes, has continued in force to the present time, and is now section 5219, U. S. Rev. Stats., as amended, U. S. C. A. title 12, sec. 548. The statute reads in part:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. * * *

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section. * * *

"2. The shares of any national banking association owned by nonresidents of any State, shall be taxed by the taxing district or by the State where the association is located and not elsewhere; and such association shall make return of such shares and pay the tax thereon as agent of such nonresident shareholders.

"3. Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed."

The Supreme Court of the United States has construed this statute in numerous decisions, and invariably has held that the states are wholly without power to levy any tax upon national banks, save as permitted by Congress, and that taxation in any other manner than that allowed by the federal statutes is void. Owens-

boro National Bank v. Owensboro, 173 U. S. 664, 19 S. Ct. 537, 43 L. Ed. 850; Des Moines National Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191.

"National banks are not merely private moneyed institutions, but agencies of the United States, created under its laws to promote its fiscal policies; and hence the banks, their property, and their shares cannot be taxed under state authority, except as Congress consents, and then only in conformity with the restrictions attached to its consent." First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 138, 70 L. Ed. 295.

It is first insisted by appellee that section 4077 of the Kentucky Statutes authorizes the assessment of a franchise tax against every corporation having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons; that this includes banks; that the tax imposed by section 4092 of the Kentucky Statutes on shares of banks and trust companies is a franchise tax, and therefore a license tax cannot be imposed on banks in view of section 4189-1 of the Kentucky Statutes which excepts from the payment of a license tax corporations which, under existing laws, are liable to pay a franchise tax. It is also argued that section 4189-1 expressly excludes banks and trust companies from the payment of a license tax.

The tax imposed by section 4092 is not a franchise tax on banks, but is an ad valorem tax on the shares of stock. The act provides that the tax shall be paid by the banks and trust companies for and on behalf of the owners of the shares of stock, shall be for state purposes only, and in lieu of all other taxes "upon said shares" by the state, or any county, city, town, or other taxing district, except that the county and city in which the bank or trust company is located may each impose a tax of not exceeding 20 cents on the $100 of the fair cash value of such shares, and that a tax of not exceeding 40 cents for school purposes may be levied in the district in which the bank or trust company is located. This section merely limits the rate of taxation that may be levied by subdivisions of the state on the fair cash value of shares of stock of banks and trust companies. The tax is not upon the bank or its capital, but upon the shares of stock as personal property in the hands of the individual shareholders. The bank is merely the

agent for the collection of the tax. The pertinent part of section 4189-1 of the Kentucky Statutes reads:

"Every corporation organized by or under the laws of this or any other state or government, owning property or doing business in this state, except * * * banks and trust companies, * * * shall pay to this State, to be credited to the general expenditure fund, an annual license tax based upon the asset value of its capital stock, as hereinafter provided."

It is argued that this section exempts banks and trust companies from the imposition of license taxes by cities, but it is plain that the exemption is limited to the state. There is nothing in the act indicating that the Legislature intended to deprive municipalities of their right to impose license taxes. The right is conferred upon cities of the fourth class by sections 3490-1 and 3490-12, Kentucky Statutes.

This brings us to the contention that the ordinance violates the State and Federal Constitutions. This contention is based upon the theory that it is discriminatory as to state banks, since a license tax cannot be imposed upon national banks. The sections of the State Constitution relied upon are section 202, which reads,

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this Commonwealth,"

and sections 171, 172, and 174, which require uniformity in valuation and rates of taxation, and taxation of all property in proportion to its value. The amendment to section 171, adopted in 1915, permits the classification of property for the purpose of taxation, but requires the taxes to be uniform upon all property of the same class. It is argued that the Legislature has placed national banks and state banks and trust companies in the same class, and that therefore the taxes which a city is permitted to levy by section 4092 of the Kentucky Statutes are the only taxes it can impose upon a bank. National banks and state banks and trust companies are placed in the same class for the sole purpose of taxing their shares of stock. Beyond that point the classification could not go, since national banks cannot be taxed by a state or any of its subdivisions, except in

the manner permitted by federal legislation. Section 4092 imposes a uniform rate of taxation on the fair cash value of the shares of stock of state and national banks, and in this respect conforms to the federal act on the subject. As heretofore stated, the argument that a license tax on state banks, which cannot be levied upon national banks, violates sections 202 and 171 of the Kentucky Constitution and the Fourteenth Amendment to the Federal Constitution is based upon the theory that it is discriminatory as to state banks. Discrimination does not result, however, if the untaxed property is for any reason exempt from taxation. Much property is exempt from taxation under our Constitution, either because of its character or ownership, but this does not render invalid the taxation of similar property which is not exempt. Congress could forbid altogether the taxation of national banks or their shares of stock by the states and their subdivisions. If Congress wholly prohibited the taxation of national banks, could it be said that the states would thereby be deprived of the right to tax other moneyed capital coming into competition with the business of national banks? A complete answer to this query is furnished by the opinion in Union Bank & Trust Company v. Phelps, 288 U. S. 181, 53 S. Ct. 321, 322, 77 L. Ed. 687, 83 A. L. R. 1438, wherein the court said:

"To accept the doctrine that as the states can only tax a federal instrumentality when permitted by Congress, therefore they cannot tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the Fourteenth Amendment, would be both illogical and destructive of their proper independence.

"Such instrumentalities are exempted from state taxation without the express consent of Congress, by the Federal Constitution. They are of a class wholly distinct from the property of ordinary corporations or individuals, and this fact cannot be disregarded by the state. If the state sees fit to tax unrestricted property within her jurisdiction, and to omit national bank shares, the classification cannot be said to be arbitrary and wholly unreasonable; the basis of it is plain enough. It may be vastly more important for the state to omit national bank shares and tax ordinary moneyed cap-

ital according to a plan not permissible in respect of national bank shares, rather than conform to the standard prescribed by Congress. There is nôthing to indicate that Congress ever supposed that mere establishment of a national bank within a state could upset the scheme for taxation, theretofore entirely proper, by producing conflict with the Fourteenth Amendment. This view would subject the taxing power of the state to the will of Congress far beyond what is necessary for the protection of federal agencies. The constitutional inhibition against taxing these agencies does not abridge the taxing power of the several states in respect of other property. The implied exemption is a shield for federal agencies, not the source of congressional power to control state action in respect of other matters.''

In Davenport National Bank v. Davenport Board of Equalization, 123 U. S. 83, 8 S. Ct. 73, 31 L. Ed. 94, the court said:

"It has never been held by this court that the states should abandon systems of taxation of their own banks, or of money in the hands of their other corporations, which they may think the most wise and efficient modes of taxing their own corporate organizations, in order to make that taxation conform to the system of taxing the national banks upon the shares of their stock in the hands of their owners. All that has ever been held to be necessary is that the system of state taxation of its own citizens, of its own banks, and of its own corporations shall not work a discrimination unfavorable to the holders of the shares of the national banks. Nor does the act of Congress require anything more than this; neither its language nor its purpose can be construed to go any further. Within these limits, the manner of assessing and collecting all taxes by the states is uncontrolled by the act of congress.''

In Bankers Trust Company v. Department of Treasury, Ind. Sup., 1 N. E. (2d) 935, 936, the point was made that an act of the General Assembly levying a tax upon banks and trust companies was not applicable to national banks, because in conflict with the federal statute permitting the taxing of national banks by

a state, and was therefore invalid as to state banks because it violated a section of the Constitution of Indiana, Constitution art. 1, sec. 23, which prohibits the General Assembly from granting to any citizen privileges or immunities which, upon the same terms, shall not equally belong to all citizens. After quoting from Union Bank & Trust Company v. Phelps, supra, the Supreme Court of Indiana said:

"Nor can it be supposed that section 23 of article 1, of the Constitution of Indiana, was intended to exempt banks and trust companies, which are creatures of the state of Indiana, from taxation, merely because the Federal Constitution exempts national banks from taxation by the state without the consent of Congress. Nor was it contemplated that the national Congress should dictate to the state Legislature whether or not banks and other competing moneyed capital should be taxed at all, and, if taxed, the manner in which they shall be taxed. If national banks are exempt from tax under the Gross Income Tax Law, it is not because of any act of the General Assembly, but because of an act of Congress, and if privileges or immunities are granted, the grant was not by the General Assembly, but by Congress, and the General Assembly has not violated the constitutional provision."

It is conceivable that the imposition of license taxes upon state banks and trust companies by municipalities might become so burdensome as to compel such banks to take out national bank charters, but whether the imposition of taxes upon state banks, which cannot be imposed upon national banks, shall be permitted is a question of policy to be determined by the Legislature.

The judgment is reversed, with directions to sustain the demurrer to the petition.