## Barnes v. Anderson Nat. Bank of Lawrenceburg and five other cases.

March 16, 1943.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellant.

James P. Helm, Jr. and Robert E. Hatton for Anderson etc.

L. W. Morris for Farmers Bank etc.

Jackson & Woodward for Peoples-Liberty etc.

Charles W. Milner and Hubert Willis for Kentucky Title etc.

Robert E. Hatton and Kammere & Hatton for Ideal Savings and Greater Louisville etc.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming in part and reversing in part.

The Federal Social Security Act of 1935, 42 U. S. C. A. Section 301 et seq., exempted from its provisions any services performed in the employ of the United States government or any instrumentality of the United States government. The act was amended in 1939 to become effective January 1, 1940. The amendment granted to the several states authority to tax instrumentalities of the United States under the provisions of Unemployment Compensation laws. The first Kentucky Unemployment Compensation Act passed by the General Assembly of 1936 exempted instrumentalities of the United States from its provisions. Acts 1936, 4th Ex.

Sess., c. 7. The 1938 Act and the 1940 amendment omitted the exemption. Acts 1938, c. 50; Acts 1940, c. 193. The Federal Social Security Board and the Unemployment Compensation Commission construed the federal act and the state law, enacted to conform thereto, to exempt from their provisions, because they were instrumentalities of the United States, national banks, federal building and loan associations, state banks holding membership in the Federal Reserve System, building and loan associations owning stock in the Home Owners Loan Corporation, and, financial institutions appointed as agencies of the board administering the provisions of the Federal Housing Act, 12 U. S. C. A. Section 1701 et seq. They construed the act not to exempt from its provisions state banks which are not members of the Federal Reserve Bank, although their deposits are insured with the Federal Deposit Insurance Corporation. After the 1939 amendment to the Social Security Act, acting under advice of the Attorney General, the Unemployment Compensation Commission reversed its former decisions and construed the Unemployment Compensation Acts of 1936 and 1938 to be applicable to the aforesaid institutions without exception.

This action was instituted by the Anderson National Bank of Lawrenceburg, suing for itself and all national banks of Kentucky, seeking a declaration of the right of national banks to be exempt from the provisions of the 1936 and 1938 Acts. The Farmers Bank and Capital Trust Company of Frankfort, representing state banks not members of the Federal Reserve System, but whose deposits nevertheless are insured with the Federal Deposit Insurance Corporation; the Peoples-Liberty Bank and Trust Company of Covington, representing state banks claiming exemption by reason of membership in the Federal Reserve System; the Kentucky Title Trust Company, representing trust companies with membership in the Federal Reserve System; the Ideal Savings, Loan and Building Association of Newport, representing institutions holding membership in the Federal Home Loan Bank under the provisions of the Home Owners' Loan Act, 12 U. S. C. A. Section 1461 et seq., and the Greater Louisville First Federal Savings and Loan Association, representing institutions appointed as agencies for the Federal Housing Administration, were permitted to intervene and assert their various

contentions in respect to their claims of exemption from the provisions of the Acts.

The chancellor entered judgment declaring: (1) All national banks and federalized building and loan associations to be exempt from the provisions of the acts, because they are instrumentalities of the United States; (2) state banks holding membership in the Federal Reserve System to be exempt from the provisions of the 1936 unemployment compensation law but not to be exempt after the effective date of the 1938 amendment; and (3) neither state bank members of the Federal Reserve System, nor state chartered building and loan association members of the Federal Home Owners Bank, to be exempt because, in his opinion, they were not instrumentalities of the federal government. All of the parties adversely affected have appealed from the judgment.

We will discuss first the question of whether national banks are entitled to the immunity claimed, and, later in the opinion, will draw analogies and distinctions in respect to the other defendants.

All rules for the interpretation and construction of statutes of doubtful meaning have been adopted and applied for the sole purpose of endeavoring to discover the legislative intent. This intention must be gleaned, if possible, from the words used in the act; but, if the language is ambiguous or doubtful, other circumstances must be taken into consideration to arrive, as nearly as possible, at the legislative intent. Some of the extraneous matters helpful to a fair interpretation of the intention of the Legislature are: legislative history, legislative construction, judicial construction, and the administrative construction placed on the act by those intrusted to enforce its provisions. 25 R. C. L. sections 265, 271, 272, 273, 274 and cases annotated thereunder. With these principles in mind we will undertake to determine whether it was the intention of the Legislature, and if so, if it legally could without the consent of Congress, require the defendants or either of them to make contributions to the Unemployment Compensation Commission.

Counsel for the Commission first insists that the law was enacted under the police power of the state and not under its power to levy taxes. He argues, upon this

premise, that whatever immunity, if any, from taxation the defendants might have, they are not exempt from payment of a sum exacted in the state's capacity to exercise its police power. This argument is vain, because we have heretofore determined that the power exercised by the state in the enactment of this law is in the exercise of its right to levy taxes. Being definitely committed to this view, it is unnecessary to iterate or reiterate the reasons underlying this conclusion. The reader may find them clearly expressed in the following opinions: Barnes v. Indian Refining Company, 280 Ky. 811, 134 S. W. (2d) 620; Unemployment Compensation Commission v. Savage, 283 Ky. 301, 140 S. W. (2d) 1073. Therefore, the question must be determined in the light of the law in respect to taxation.

Counsel for the Commission contends that national banks are private corporations operated primarily for private profit and therefore cannot be deemed to be instrumentalities of the federal government. He argues that the opinion of Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, has been misinterpreted in a great number of Supreme Court cases following the rendition of that opinion. The controversy in that action concerned the right of the state of Maryland to impose a tax on the Bank of the United States in the exercise of the right granted to it by Congress to issue bank notes. It was held that in issuing the notes the bank was exercising a governmental function and the operation was immune from taxation. The Court additionally reasoned that since the provisions of the act were confined to the banks not chartered under the laws of Maryland, the tax was discriminatory. The decision in that case went no further than the recitation above; but, with that as a commencement, the trend of judicial thought developed into the conclusion that national banks (apparently in all of their functions) are to be considered to be instrumentalities of the government, and, by reason of that fact, the states are without power to tax them in any respect, unless consent first shall have been obtained from the Congress of the United States.

In Osborn v. President, etc. of Bank of U. S., 9 Wheat. 738, 860, 6 L. Ed. 204, in an opinion by Chief Justice Marshall, the court said:

"The whole opinion of the court, in the case of Mc-Culloch v. Maryland is founded on, and sustained by, the idea that the bank is an instrument which is 'necessary and proper for carrying into effect the powers vested in the government of the United States.'"

In both McCulloch v. Maryland and Osborn v. President, etc., of Bank of U. S., the bank involved was the second National Bank of the United States, which was partially owned by the United States Government. It was not until the year 1864 that Congress passed the first National Banking Act which, as amended, is now in force. 12 U. S. C. A. Section 21 et seq. Whereas, previous to that time there had been only two national banks, after the passage of the act of 1864 many sprang into existence. The Supreme Court construed the Act of 1864 in Farmers & Mechanics National Bank v. Dearing, 91 U. S. 29, 33, 23 L. Ed. 196, wherein it was held:

"The constitutionality of the act of 1864 is not questioned. It rests on the same principle as the act creating the second bank of the United States. The reasoning of Secretary Hamilton and of this court in McCulloch v. Maryland, 4 Wheat. 316 [4 L. Ed. 579], and in Osborne v. [President, etc., of] Bank of U. S., 9 Wheat. 738 [16 L. Ed. 204], therefore, applies. The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them Congress is the sole judge."

In Owensboro National Bank v. Owensboro, 173 U. S. 664, 19 S. Ct. 537, 538, 43 L. Ed. 850, which cited with approval Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, the court said:

"'National banks are instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. * * *' It follows, then, necessarily from these conclusions, that the respective states would be wholly without power to levy any tax, either direct or indirect, upon the national banks, their property, assets, or franchises, were it not for the permissive legislation of congress."

In First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 138, 70 L. Ed. 295, it was held:

"National banks are not merely private moneyed institutions, but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property, and their shares cannot be taxed under state authority, except as Congress consents, and then only in conformity with the restrictions attached to its consent."

Counsel for the Commission admit the existence of the opinions above cited but insist that the more recent decisions of the Supreme Court have a tendency to depart from the rule established. But we are of the opinion that he is in error in this respect. On April 22, 1940, in an opinion prepared and delivered by Mr. Justice Reed of Kentucky, the Supreme Court said:

"* * * Congress may intervene to protect its instrumentalities [national banks] from any other tax which threatens their usefulness."

Colorado National Bank of Denver v. Bedford, 310 U. S. 41, 60 S. Ct. 800, 804, 84 L. Ed. 1067. By any other tax the court referred to any tax other than the ones Congress permits the states to levy. As recently as March 1, 1943, an opinion was rendered by the Supreme Court under the style of Maricopa County v. Valley National Bank of Phoenix, 63 S. Ct. 587, 87 L. Ed. 537. The Valley National Bank sued Maricopa County, its treasurer, and its tax collector to restrain the collection of state, county, school district, and municipal taxes on its shares owned by the Reconstruction Finance Corporation for the years 1935 and 1936. The opinion pointed out that prior to March 9, 1933, national banks were not authorized to issue preferred shares, but, on that date, they were given authority and the Reconstruction Finance Corporation was authorized to subscribe therefor. In pursuance of that authority the bank issued to the Reconstruction Finance Corporation certain shares valued at $1,240,000 at par. When the shares were acquired by the Reconstruction Finance Corporation the act of Congress permitting real estate and bank shares to be taxed by states was in effect. Section 5219, Revised Statutes, 12 U. S. C. A. Section 548. Previous to March 20, 1936, the Supreme Court held that preferred shares of national banks held by the Reconstruction Finance

Corporation were subject to taxation by reason of the consent given by Congress in section 5219, supra. Baltimore National Bank v. State Tax Commission, 279 U. S. 209, 56 S. Ct. 417, 80 L. Ed. 586. On March 20, 1936, Congress enacted a statute providing that shares of preferred stock of national banks theretofore and, thereafter acquired by the Reconstruction Finance Corporation shall not be the subject of taxation, as long as owned by the Corporation. 49 Stat. 1185, 12 U. S. C. A. Section 51d. On the authority of that act, the district court issued a permanent injunction against the collection of the taxes. Judgment was affirmed by the Circuit Court of Appeals. Maricopa County v. Valley Nat. Bank of Phoenix, 9 Cir., 130 F. (2d) 356. Certiorari was granted because of the public importance of the question raised. In affirming the decision of the Circuit Court the Supreme Court said [63 S. Ct. 588, 87 L. Ed. 537]:

> "Little need be said in answer to the argument that the Act violates the Tenth Amendment. The authority by which the taxes in question were levied did not stem from the powers 'reserved to the States' under the Tenth Amendment. It was conferred by Congress which has under the Constitution exclusive authority to determine whether and to what extent its instrumentalities, such as the Reconstruction Finance Corporation, shall be immune from state taxation."

There follows citation of authorities, and the opinion resumes:

> "Hence when Congress withdrew the privilege which it had previously granted, it was not curtailing any political power which the Constitution had reserved to Arizona."

The opinion then cites Owensboro National Bank v. Owensboro, supra. Thus, it will be seen, that within three years last past the Supreme Court has reaffirmed its determination that national banks are instrumentalities of the United States and within two weeks last past it has reaffirmed its determination that Congress has, under the Constitution, exclusive authority to determine whether and to what extent its instrumentalities shall be immune from state taxation. These decisions have been adhered to by the vast majority of courts of last

resort. In respectful regard of those authorities, this court arrived at a like decision in City of Shelbyville v. Citizens Bank of Shelbyville, 272 Ky. 559, 114 S. W. (2d) 719, wherein it was said:

"That neither a state nor a subdivision thereof can impose a license or franchise tax on a national bank is firmly established by decisions of the Supreme Court of the United States. * * * National Banks were first established by Congress in 1864, and by an act passed in 1868, Congress granted a qualified permission to the states to tax them. This act, with slight changes, has continued in force to the present time, and is now section 5219, U. S. Rev. Stats., as amended, U. S. C. A. title 12, Section 548."

Thus, it will be seen, the judicial construction of the question is to the effect, not only that instrumentalities of the United States are not subject to taxation by the individual states, except by the consent of Congress, but also, that national banks are such instrumentalities. That the federal legislative construction is identical with the judicial construction is clearly established by the amendment to the Social Security Act which became effective January 1, 1940, wherein, for the first time, Congress declared that instrumentalities of the United States could be subjected by the states to contributions to Unemployment Compensation funds. That the National Social Security Board and the State Unemployment Compensation Commission charged with the enforcement of the Acts, by bulletins and letters contemporaneously construed the Acts in like manner is admitted. Were we in doubt as to the legislative intent, because of ambiguity in the wording of the Acts, we would not disregard nor lightly overturn the contemporaneous construction given by those charged with their execution and operation. 25 R. C. L. section 274, page 1043, and cases annotated thereunder. That the Kentucky Legislature intended the law to be so construed is almost manifest by the very enactment of the law. When originally enacted in 1936, the Act recited that if the federal act providing for unemployment compensation should become inoperative, the state law, by virtue of that fact, shall likewise become inoperative. This provision plainly shows that the law was enacted in pursuance to the federal act and to conform thereto. The Federal Social Security Act provides that the state enactment shall con-

form to the federal law as a condition precedent to the latter's participation in the administration of the state law. The federal act provides for a tax of 3 per cent upon all covered employers in all of the states. It contains a further provision that upon the enactment by a state of an Unemployment Compensation law conforming to the Social Security Act, the federal government will remit to the state Commission 90 per cent of the 3 per cent collected from the employers and will defray the expenses of operation incurred by the Commission out of the remaining 10 per cent. If the Act of 1936 or the 1938 Amendment should be construed to include instrumentalities of the government, the act would not, to that extent, conform to the federal law; and, since it was enacted for the purpose of conforming to the Social Security Act, the Legislature certainly could not have intended to enact a law upon which a construction could be placed which might deprive the Commission of the benefits of the taxes paid by the employers. We therefore conclude that national banks are not covered employers within the meaning of the Act.

We now turn to the analogies and distinctions between national banks and the classes of institutions represented by the other defendants in the case. Most of the judicial decisions characterizing national banks as instrumentalities of the government were decided previous to the establishment of the Federal Reserve System by the Federal Government. We deem it unnecessary to detail the functions of this system because they are so well known as to be deemed matters of common knowledge. The point we desire to make is: that since the establishment of the Federal Reserve System, the member banks, to a greater extent than ever before, are engaged in the performance of governmental functions directed toward the vital public purpose of the government to stabilize economic and social conditions. The same policy was the principle which motivated Congress in the establishment of the Home Owners Loan Corporation, the Federal Housing Corporation, and similar federal agencies. And while the Federal Deposit Insurance Corporation was created to perform a function in furtherance of these principles, banks receiving the benefits of its functions are not members of the corporation, nor do they themselves perform any act for the corporation, as its agent. They merely pay

to the corporation, as they might to any insurance company, a premium in consideration of a contract insuring deposits placed in their custody. What we have said in regard to national banks therefore applies equally and as forcibly to state banks which are members of the Federal Reserve System, and to all other corporations, state or national, which by exercise of membership in, or contract with, a federal agency perform functions in furtherance of the purposes underlying the creation of the agency. This principle has been stated by the Supreme Court in Westfall v. United States, 274 U. S. 256, 47 S. Ct. 629, 71 L. Ed. 1036. While that case was directly concerned with the jurisdiction of the United States Courts over criminal prosecutions of officers and employees of federal instrumentalities (specifically an employee of a state bank which was a member of the Federal Reserve System), the question for decision turned directly on a determination of the question under consideration in this case. The court said:

"* * * And if a State bank chooses to come into the System [i. e., Federal Reserve System] created by the United States, the United States may punish acts injurious to the System, although done to a corporation that the State also is entitled to protect. The general proposition is too plain to need more than statement. That there is such a System and that the Reserve Banks are interested in the solvency and financial condition of the members also is too obvious to require a repetition of the careful analysis presented by the Solicitor General. The only suggestion that may deserve a word is that the statute applies indifferently whether there is a loss to the Reserve Banks or not. But every fraud like the one before us weakens the member bank and therefore weakens the System. Moreover, when it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so. It may punish the forgery and utterance of spurious interstate bills of lading in order to protect the genuine commerce. United States v. Ferger, 250 U. S. 199, 39 S. Ct. 445, 63 L. Ed. 936. See further Southern Ry. Co. v. United States, 222 U. S. 20, 26, 32 S. Ct. 2, 56 L. Ed. 72. That principle is settled. Finally Congress may employ state corporations with their consent as instrumentalities of the United States, Clallam Coun-

ty v. United States, 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328, and may make frauds that impair their efficiency crimes, United States v. Walter, 263 U. S. 15, 44 S. Ct. 10, 68 L. Ed. 137 * * *.''

This proposition requires no further elucidation.

We are now faced with the final contention of the Farmers Bank and Capital Trust Company that the act, in so far as it purports to tax state banks and to exempt national banks, is violative of the state constitution, because it is a discrimination denounced and forbidden by sections 171, 172, 174, and 202 of the Constitution. This question was squarely before us in the case of City of Shelbyville v. Citizens Bank of Shelbyville, supra. There it was decided that national banks are exempt from taxation by the Constitution of the United States and the Acts of Congress; and, if immunities are granted by Congress, the Legislature has not violated any provision of the state or national constitution by enforcing its power of taxation on institutions not immunized by the federal government. We will not further extend the reasoning by which we arrive at this conclusion, because it would merely be an iteration of the reasoning contained in the Shelbyville case, and to which the reader may refer at his discretion.

Wherefore, the judgment as to the Anderson National Bank, Farmers Bank and Capital Trust Company, and the Greater Louisville First Federal Savings and Loan Association is affirmed; but, as to the Peoples-Liberty Bank and Trust Company, the Kentucky Title Trust Company, and the Ideal Savings, Loan and Building Association, it is reversed for proceedings consistent with this opinion.