COMMONWEALTH of Kentucky,
Appellant,

v.

Teresa Fay VINCENT, Appellee.

No. 2000–SC–0449–TG.

Supreme Court of Kentucky.

March 21, 2002.

A.B. Chandler III, Attorney General of Kentucky, Frankfort, Brian Patrick Butler, Commonwealth Attorney's Office, Louisville, Counsel for Appellant.

Daniel T. Goyette, Chief Public Defender, Bruce P. Hackett, Deputy Appellate Defender, Office of the Jefferson District Public Defender, Louisville, Counsel for Appellee.

JOHNSTONE, Justice.

Appellant, Teresa Fay Vincent, was convicted of murder and sentenced to twenty-five years' imprisonment. The sole issue on appeal is whether the domestic violence exemption of KRS 533.060(1) exempts Vin-

cent from the terms of the violent offender statute of KRS 439.3401. We hold that it does not and reverse the trial court on this issue.

On September 9, 1998, Vincent shot and killed her ex-husband, Bryan Hitchcock. According to Vincent, she went to Hitchcock's home because she caught him in a lie and wanted to talk with him about it. She went armed with a handgun. Hitchcock was not home, but his roommate, Donald Lawery, was. Lawery let Vincent in to wait for Hitchcock. While waiting for Hitchcock to return, Vincent scrolled through Hitchcock's caller i.d. and found Sheila Salzman's number listed there. Salzman was Hitchcock's girlfriend. Vincent then called Salzman and left the message, "You have something of mine we need to discuss."

When Hitchcock returned, Vincent questioned him about a trip he was planning to take to Florida and asked if she could go with him. Hitchcock told her that she could not go. The two argued and Vincent started to cry. During the argument, Vincent found a card sticking out of Hitchcock's luggage. She removed the card and discovered that it was signed, "Love Bryan." This discovery upset her further. At this point, Vincent's testimony differs from Lawery's testimony.

According to Lawery, Vincent sat down on a couch and began playing with Hitchcock's camera. After Vincent dropped the camera on the floor, Hitchcock reached down to pick it up. As he did so, Lawery testified that Vincent pulled the handgun from her purse and shot Hitchcock.

According to Vincent, the handgun fell out of her coat and slipped in between the cushions of the couch. As she retrieved the gun from the couch, Hitchcock asked her what she had. Vincent showed him the gun and said, "This." Vincent testified that she accidently pulled the trigger while showing Hitchcock the gun. The resulting fatal shot hit Hitchcock in the chest.

After Vincent was convicted, the trial court held a hearing to determine whether Vincent was a victim of domestic violence for the purposes of KRS 439.3401 and KRS 533.060. Vincent presented sufficient evidence to support a finding that she had been a victim of domestic abuse and that Hitchcock was the victimizer. This is not in dispute. What is in dispute is what is required to show that one is entitled to the domestic violence exemption of KRS 439.3401(5).

Vincent argues that the exemption potentially applies to any defendant who commits a violent offense against a person who, contemporaneously or previously, committed acts of domestic violence against the defendant. That is, Vincent argues that the application of the exemption turns on a person's status as a victim of domestic violence. The Commonwealth argues that the exemption only applies when the domestic violence is involved in the underlying offense. In other words, the Commonwealth argues that there has to be a connection between the defendant's violent offense at issue and the history of domestic violence between the defendant and the victim. The plain language of the statute supports the Commonwealth's argument.

KRS 439.3401(3) states that a person, "who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony who is a violent offender [1] shall not be released on

---

1. "[V]iolent offender means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felo-

ny, or Class B felony involving the death of the victim or serious physical injury to a victim, or rape in the first degree or sodomy

probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed." KRS 439.3401(5) creates an exemption to this requirement:

This section shall not apply to a person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 *with regard to the offenses involving the death of the victim or serious physical injury to the victim.* The provisions of this subsection shall not extend to rape in the first degree or sodomy in the first degree by the defendant.

(Emphasis added). The phrase "with regard to the offenses involving the death of the victim or serious physical injury to the victim" dictates that there be some connection or relationship between the domestic violence suffered by the defendant and the underlying offense committed by the defendant.

"Regard" means "an aspect to be taken into consideration or *significant to matter in question.*" Webster's *Third New International Dictionary,* 1911 (1966) (emphasis added). "Regard" is synonymous with "respect," which means "to have regard or reference to: to relate to: be concerned with ...." *Id.* at 1934. Thus, the statute requires that there be a relationship between the domestic violence or abuse and the underlying offense. Proof of history of domestic violence between the defendant and the victim is not, by itself, sufficient to trigger the statute's parole exemption. If the General Assembly had so intended, it could have said so. *See c.f.* S.C.Code Ann. § 16–25–90, which expressly provides that a defendant who commits an offense against a household member is eligible for parole after serving 25 percent of her sentence when the defendant shows that the household member has a history of inflicting domestic violence upon the defendant.

in the first degree of the victim." KRS

■ "[P]arole is a matter of legislative grace and ... the general assembly may impose such limitations, restrictions and conditions as it deems best for society." *Willard v. Ferguson,* Ky., 358 S.W.2d 516 (1962). As such, it is not for this Court to determine the wisdom of the General Assembly's exercise of its power in this area. Vincent argues that the construction of the statute we adopt here is not rational in light of KRS 533.060(1), which states in pertinent part:

When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted.

This statute creates—for defendants who are also victims of domestic violence—an unconditional exception to the statute's general eligibility requirements for probation, shock probation, or conditional discharge. Unlike the parole exemption of KRS 439.3401(5), application of the probation exception of KRS 533.060(1) turns on the defendant's status as a victim of domestic violence. The probation exception does not require the defendant to show any connection between the commission of

439.3401(1).

an offense and the history or occurrence of domestic violence between a defendant and a violent crime victim. Because the *probation exception* applies to defendants who committed a violent offense, Vincent argues that it is just not reasonable that the General Assembly meant to limit the *exemption for parole eligibility* to those defendants whose violent crime is somehow connected or related to the history or occurrence of domestic violence between the defendant and the victim.

■ Probation, like parole, is purely a matter of legislative grace. *White v. Commonwealth,* Ky.App., 611 S.W.2d 529, 531 (1980). Whether the distinction—for defendants who are also victims of domestic violence—between the exception for probation eligibility set forth in KRS 533.060(1) and the exemption for parole eligibility set forth in KRS 439.3401(5) is reasonable or logical is not for us to decide. Nor can it affect our construction of what the General Assembly clearly states in KRS 439.3401(5), *i.e.,* that in order to be eligible for the exemption, a defendant, who is also the victim of domestic violence, must establish a connection or relationship between the domestic violence and the violent offense for which the defendant stands convicted. *See Land v. Commonwealth,* Ky., 986 S.W.2d 440, 442 (1999) ("Parole is simply a privilege and the denial of such has no constitutional implications.").

Finally, in *Springer v. Commonwealth,* Ky., 998 S.W.2d 439 (1999), we compared KRS 533.060 with KRS 439.3401 and concluded:

> Thus, the legislature determined, for whatever reason, that the exemption from the probation or conditional discharge restrictions in KRS 533.060(1) applies whether the domestic violence and abuse occurred previous to the offense or at the time the offense was committed; but the exemption from the parole restrictions in KRS 439.3401 applies only if the domestic violence and abuse was "involved" in the offense.

*Id.* at 457.

At the time we decided *Springer,* KRS 439.3401(2) and (3) only restricted parole eligibility. The 2000 General Assembly amended KRS 439.3401(2) and (3) so that the stricter "involved" requirement applies to probation as well as parole eligibility for violent offenders. 2000 Ky. Acts, Ch. 401 § 8. Apparently, the General Assembly had *Springer* in mind when it amended KRS 439.3401(2) and (3). This is a strong indication that the General Assembly intended to adopt *Springer*'s interpretation of "involved" contained in KRS 439.3401(5). *See, e.g., Falender v. Hankins,* 296 Ky. 396, 177 S.W.2d 382, 383 (1944) (It is a "well-settled rule of statutory construction, that when a statute or clause, or provision thereof, has been construed by the court of last resort of a state, and the statute has been substantially re-enacted, the Legislature will be deemed to have adopted such construction....").

■■ Vincent offered absolutely no evidence that connected the shooting with the history of domestic violence between Hitchcock and her. Vincent's version of the events was that the shooting was accidental. The Commonwealth's eyewitness testified that the shooting was deliberate and unprovoked. While we cannot state definitively what is necessary to show that a defendant is eligible for the domestic violence or abuse exception of KRS 439.3401(5), we can state and do hold that a prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption of KRS 439.3401(5).

For the foregoing reasons, the judgment of the Jefferson Circuit Court is reversed and this case is remanded for re-sentencing in conformance with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion, with STUMBO, J., joining that dissent.

KELLER, Justice, dissenting.

I respectfully dissent from the majority's opinion because I do not believe that "with regard to the offenses involving the death of the victim or serious physical injury to the victim"[1]—the relevant language in KRS 439.3401(5)—operates "clearly,"[2] or in "plain language"[3]—or, for that matter, *at all*—to limit the scope of the domestic violence exemption to crimes "involving" present acts of domestic violence. In my opinion, the majority misinterprets the grammatical role of the "with regard to ..." language in KRS 439.3401(5). Instead of narrowing the scope of the exemption by creating a hurdle relating to the timing of the abuse, this language merely limits the applicability of the domestic violence exemption to those violent offenses in which a victim is killed or seriously physically injured. Thus, I dissent from the majority's holding that "a prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption

of KRS 439.3401(3),"[4] and I would affirm the trial court's determination that Appellee qualifies for the KRS 439.3401(5) domestic violence exemption from KRS 439.3401's "violent offender" limitations.

In my opinion, a proper interpretation of the KRS 439.3401(5) domestic violence exemption must begin with a consideration of both the current and prior KRS 439.3401(1) definitions of "violent offender." Subsection (1) currently reads:

> As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felony, or Class B felony involving the death of the victim or serious physical injury to a victim, or rape in the first degree or sodomy in the first degree of the victim. The court shall designate in its judgment if the victim suffered death or serious physical injury.

The KRS 439.3401(1) statutory definition thus provides for two categories of violent offenders: (1) persons who commit "a capital offense, Class A felony, or Class B felony where the elements of the offense or the judgment of the court demonstrate that the offense involved death or serious physical injury to the victim";[5] and (2) persons who commit the offenses of First Degree Rape[6] and First Degree Sodomy.[7] The "involving the death of the victim or serious physical injury to a victim" language clarifies that persons who commit Class A or Class B felonies are violent offenders only under specified circumstances.[8] Undoubtedly, there is a degree

---

1. KRS 439.3401(5).

2. Majority Opinion at 70 S.W.3d 422, 425 (2002).

3. *Id.* at 423.

4. *Id.* at 425.

5. 501 KAR 1:030 § 3(1)(b).

6. KRS 510.040.

7. KRS 510.070.

8. While all of Kentucky's capital offenses, by definition, involve the death of the victim, *see* KRS 507.020 (Murder); KRS 509.040 (Capital Kidnapping); KRS 527.200 (Capital First Degree Use of a Weapon of Mass Destruc-

of overlap between the two categories of violent offenses because certain First Degree Rape and First Degree Sodomy crimes will also come within the first category.[9] However, the statute's separate enunciation of those crimes clarifies that all convictions for First Degree Rape and First Degree Sodomy constitute violent offenses even when the conduct—i.e., rape or sodomy resulting from forcible compulsion or the victim's incapacity [10]—although

undoubtedly traumatic for the victim, might not involve serious physical injury as that term is defined in the Kentucky Penal Code.[11]

The current language of KRS 439.3401(1), however, is the result of an amendment by the 1998 General Assembly.[12] Previously, *and at the time the KRS 439.3401(5) domestic violence exemption was adopted,* the subsection defining "vio-

tion), and will therefore be violent offenses whenever committed, the same generalization is not true as to Class A felonies and Class B felonies. *See, e.g.* KRS 218A.1432 (Manufacturing Methamphetamine); KRS 250.489 (Possession of Anhydrous Ammonia in Unapproved Container); KRS 250.4892 (Tampering with Anhydrous Ammonia Equipment); KRS 514.030 (Theft by Unlawful Taking); KRS 514.110 (Receiving Stolen Property); KRS 154A.990(3) (Cheating or Attempting to Cheat the Lottery); KRS 434.144 (Filing an Illegal Lien); KRS 436.026 (Sale or Transfer of a Viable Aborted Child for Use in Experimentation); KRS 513.020 (First Degree Arson). The qualifying language in KRS 430.3401(1), thus constitutes a rational decision by the legislature to limit the definition of violent offenses to crimes "involving the death of the victim or serious physical injury to a victim"—in other words, crimes commonly thought of as "violent." I submit that this is the reason that KRS 439.3401(1) requires trial judges to designate in the judgment whether the victim was killed or suffered serious physical injury.

9. *See* KRS 510.040(2) ("Rape in the first degree is a Class B felony unless the victim … receives a serious physical injury in which case it is a Class A felony."); KRS 510.070(2) ("Sodomy in the first degree is a Class B felony unless the victim … suffers a serious physical injury in which case it is a Class A felony.").

10. *See* KRS 510.040(1):
A person is guilty of rape in the first degree when:
(a) He engages in sexual intercourse with another person by forcible compulsion; or
(b) He engages in sexual intercourse with another person who is incapable of consent because he:

1. Is physically helpless; or
2. Is less than twelve (12) years old.
*Id.;* KRS 510.070(1).

11. KRS 500.080(15) ("'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ.").

12. *See* 1998 Ky. Acts ch. 606, § 77 (effective July 15, 1998). The amendment to KRS 439.3401 was part of House Bill 455 ("the Omnibus Crime Bill"). Although not part of the original bill filed, an amendment to KRS 439.3401(1) was proposed as part of the first House Committee Substitute to HB 455. That amendment would have made a substantive change regarding First Degree Rape and First Degree Sodomy and violent offender status:

As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felony, or Class B felony involving the death of the victim *or serious physical injury to a victim,* or rape in the first degree or sodomy in the first degree of the victim *by forcible compulsion* [, or serious physical injury to a victim]. *The court shall designate in its judgment if the victim suffered death or serious physical injury, or, in the case of rape or sodomy, forcible compulsion.*

A second House Committee Substitute deleted the "forcible compulsion" language, and the language now contained at KRS 439.3401(1) represents the amendments in the final version of HB 455.

lent offender" read slightly differently and far less clearly because the subsection referenced the rape and sodomy crimes in the middle of the language concerning death or serious physical injury to the victim:

> As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felony, or Class B felony *involving the death of the victim, or rape in the first degree or sodomy in the first degree of the victim, or serious physical injury to a victim.* The court shall designate in its judgment if the victim suffered death or serious physical injury.[13]

While the prior language of KRS 439.3401(1) did not differ substantively from the current version—all Class A First Degree Rape and First Degree Sodomy offenses of a child under twelve (12) years of age as well as all Class B First Degree Rape and First Degree Sodomy offenses were violent offenses even under the prior version—I believe the confusing configuration of language explains the purpose of the "with regard to the offenses involving the death of the victim or serious physical injury to the victim" language in KRS 439.3401(5).

KRS 439.3401(5) reads:

> This section shall not apply to a person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the

death of the victim or serious physical injury to the victim. The provisions of this subsection shall not extend to rape in the first degree or sodomy in the first degree by the defendant.

After defining "regard," the majority states "the statute requires that there be a relation between the domestic violence or abuse and the underlying offense."[14] The majority thus apparently believes that the language "with regard to the offenses involving the death of the victim or serious physical injury to the victim" modifies and qualifies "domestic violence or abuse" and not the immediately preceding phrase "pursuant to KRS 533.060"—i.e., as if the first sentence actually read:

> This section shall not apply to a person who has been determined by a Court to have been a victim of domestic violence or abuse **with regard to the offenses involving the death of the victim or serious physical injury to the victim** pursuant to KRS 533.060. ~~with regard to the offenses involving the death of the victim or serious physical injury to the victim.~~[15]

This, of course, interprets the relevant language as a dangling modifier which—in sharp contrast to the majority's belief in the General Assembly's clarity[16]—is inherently ambiguous, if not the anthesis of writing clarity:

> The position of the words in a sentence is the principal means of showing their relationship. Confusion and ambi-

---

**13.** 1986 Ky. Acts ch. 358 § 1 (effective July 15, 1986) (amended by 1998 Ky. Acts ch.606, § 77 (effective July 15, 1998)) (emphasis added).

**14.** Majority Opinion at 70 S.W.3d 422, 424.

**15.** In some ways, it appears that the majority interprets the first sentence of KRS 439.3401(5) as if "pursuant to KRS 533.060"

is the phrase which is out of place—i.e., as if the sentence actually read:
> This section shall not apply to a person who has been determined by a court, **pursuant to KRS 533.060,** to have been a victim of domestic violence and abuse ~~pursuant to KRS 533.060~~ with regard to the offenses involving the death of the victim or serious physical injury to the victim.

**16.** *See supra* notes 2–3 and surrounding text.

guity result when words are badly placed. The writer must, therefore, bring together the words and groups of words that are related in thought and keep apart those that are not so related.

. . .

Interposing a phrase or clause ... interrupts the flow of the main clause

. . . .

. . .

Modifiers should come, if possible, next to the word they modify. If several expressions modify the same word, they should be arranged so that no wrong relation is suggested.

. . .

Note ... how swiftly meaning departs when words are wrongfully juxtaposed.[17]

I, too, see the "with regard to ..." language as a dangling modifier,[18] but I believe it modifies the verb in the first part of the sentence—i.e., as if the sentence actually read:

> This sentence shall not apply, **with regard to the offenses involving the death of the victim or serious physical injury to the victim,** to a person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060, ~~with regard to the offenses involving the death of the victim or serious physical injury to the victim.~~

As I interpret the sentence, I believe the General Assembly—in the face of a convoluted subsection (1) definition of "violent offender"[19]—intended to remove all doubt that the exemption was not available to persons who are violent offenders as a result of their commission of First Degree Rape or First Degree Sodomy crimes. At the time the legislature enacted the subsection (5) domestic violence exception, subsection (1) defined a violent offender as a person who committed a capital offense, Class A felony, or Class B felony involving: (1) death of the victim; (2) rape in the first degree or sodomy in the first degree; or (3) serious physical injury to a victim. Because of the possible intersection between the categories—Class A First Degree Rape and Sodomy offenses where the victim was also seriously physically injured—and the confusing manner in which those categories were defined, the legislature included qualifying language in both sentences of subsection (5). Under my construction, while no violent offender could qualify for the exemption "with respect to" his or her commission of First Degree Rape or First Degree Sodomy, he or she would qualify for the exemption "with respect to" other violent offenses (involving death of or serious physical injury to a victim) "pursuant to KRS 533.060"—in other words, by demonstrating that the person against whom the offense was committed *"had previously or was then* engaged in an act or acts of domestic violence as defined in KRS 403.720 ...."[20] Appellee qualifies for the exemption under this interpretation.

In defense of its interpretation, the majority states: "Proof of history of domestic violence between the defendant and the victim is not, by itself, sufficient to trigger the statute's parole exemption. *If the General Assembly had so intended, it could*

---

**17.** William Strunk, Jr. and E.B. White, *The Elements of Style* (3rd Ed.), 28–31 (Allyn & Bacon, 1979).

**18.** I note that other Justices on this Court have previously noted the difficulties in construing KRS 439.3401 because of its grammatical quirkiness. *See Huff v. Commonwealth*, Ky., 763 S.W.2d 106, 112–113 n. 2 (Leibson, J., dissenting).

**19.** *See supra* note 13 and surrounding text.

**20.** KRS 533.060 (emphasis added).

*have said so.*" [21]  This is, of course, a double-edged sword which only illustrates the ambiguity in KRS 439.3401(5). If the General Assembly intended for this language to mean that the exemption was available only to those defendants who commit their crimes in the direct context of an abusive situation, it could have said so—at the very least by placing language intended to create such a qualification in the proper place in the sentence.

The majority's construction raises other questions as well. First, if the General Assembly intended for the "with regard to" language to limit the scope of the exemption, why did it use the plural, "the offenses" instead of the singular, "an offense" or "one or more of the offenses"? "The," when used before a plural noun, denotes "particular specified persons or things." [22]  Does this mean that a domestic violence victim who, in the midst of an abusive situation, commits a single offense of First Degree Manslaughter is not eligible for the exemption? In order for the first sentence of KRS 439.3401(5) to mean what the majority construes it to mean, the reader must not only rearrange the words, but also substitute the singular for the plural—i.e., as if the sentence actually read:

> This section shall not apply to a person who has been determined by a Court to have been a victim of domestic violence or abuse **with regard to [an offense]** ~~the offenses~~ **involving the death of the victim or serious physical injury to the victim** pursuant to KRS 533.060. ~~with regard to the offenses involving the death of the victim or serious physical injury to the victim.~~

Second, why does KRS 439.3401(5) indicate that the judicial determination as to a defendant's qualification for the exemption be made "pursuant to KRS 533.060" if the determination itself is so radically different from KRS 533.060? KRS 533.060(1) states that trial courts may not grant probation or conditional discharge to defendants who have used a firearm in connection with certain offenses, but contains a domestic violence exemption broader than the one the majority interprets in KRS 439.3401(5).[23]  If the determination is to be made "pursuant to KRS 533.060," but not *really* pursuant to KRS 533.060 because the judge has to ignore the "had previously ... engaged in an act or acts of domestic violence and abuse ..." [24] language, the General Assembly could have "said so" by explicitly stating the differences between the KRS 439.3401(5) determination and the KRS 533.060 determination.

The majority is comfortable side-stepping the incongruities between its construction of KRS 439.3401(5) and other legislative changes which were "part of a package of legislation intended to improve the plight of battered spouses[,]" [25] because it finds the language of KRS 439.3401(5) to be a clear, unambiguous expression of legislative intent.[26]  I, however, believe a broader examination of legislative intent is necessary in this case precisely because the position of the "with regard to

---

**21.** Majority Opinion at 70 S.W.3d 422, 424 (emphasis added).

**22.** American Heritage Dictionary of the English Language (1969) at 1333.

**23.** *See infra* notes 32 and surrounding text.

**24.** KRS 533.060.

**25.** *Grimes v. McAnulty,* Ky., 957 S.W.2d 223, 229 (1997) (Cooper, J. dissenting).

**26.** *See Regional Jail Authority v. Tackett,* Ky., 770 S.W.2d 225, 229 (1989) ("Where there is no ambiguity in a statute there is no need to resort to the rules of statutory construction in interpreting it. The words of the statute are simply accorded their commonly understood meaning.").

..." language creates doubts about what that language modifies—and, therefore, what KRS 439.3401(5) means—which are only magnified by the more-than-viable alternative construction of this language urged in this dissent. In cases of statutory construction, "the primary rule is to ascertain and give effect to the intention of the Legislature."[27] While we need not turn to rules of statutory interpretation when the language itself is explicit, when it is not—as is the case here—a reviewing court must turn to rules of construction to ascertain legislative intent.[28]

One rule of statutory interpretation is that courts should seek to harmonize statutes which are *in pari materia*—especially when they are part of the *same* legislative enactment.[29] The legislation which added the subsection (5) domestic violence exemption to KRS 439.3401[30] also: (1) authorized a defendant claiming self-protection to introduce evidence of a *"prior* act of domestic violence and abuse"[31] in support of a claim of self-defense; (2) exempted a victim of a *previous* act or acts of domestic violence and abuse from the restrictions against probation, shock probation, or conditional discharge for the use of a firearm;[32] and, perhaps most significantly, (3) allowed a violent offender convicted prior to the effective date of the enactment to be

27. *Moore v. Alsmiller*, 289 Ky. 682, 160 S.W.2d 10, 12 (1942).

28. *See Barnes v. Anderson National Bank*, 293 Ky. 592, 169 S.W.2d 833, 835 (1943) ("[I]f the language is ambiguous or doubtful, other circumstances *must be taken into consideration* to arrive, as nearly as possible, at the legislative intent." (emphasis added)).

29. *Economy Optical Co. v. Kentucky Board of Optometric Examiners*, Ky., 310 S.W.2d 783, 784 (1953); *Dieruf v. Louisville & Jefferson Co. Board of Health*, 304 Ky. 207, 200 S.W.2d 300 (1947) ("[S]tatutes in pari materia are not to be considered as isolated fragments of law, but as a whole or as a part of a connected system, unless a different purpose *is clearly shown.*" (emphasis added)).

30. 1992 Ky. Acts ch. 173, § 4 (effective July 15, 1992).

31. KRS 503.050(3) ("Any evidence presented by the defendant to establish the existence of *a prior act or acts of domestic violence and abuse* as defined in KRS 403.720 by the person against whom the defendant is charged with employing physical force shall be admissible under this section." (emphasis added)). Although the constitutionality of this provision is debatable, *see O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571, 576 (1995), this provision, and a change by the same legislature to the definition of "imminent" contained at KRS 503.010(3), provide strong evidence that the General Assembly recognized, and made allowances for, the fact that victims of past acts of domestic violence or abuse may respond differently to a given situation than a person who had not been subject to such abuse. This Court recognized this possibility in *Commonwealth v. Rose*, Ky., 725 S.W.2d 588, 590–591 (1987) ("[Expert testimony concerning battered wife syndrome] might be of assistance to the jury as trier of fact because it tends to explain why a person suffering from the syndrome would not leave her mate and would be driven by fear of continuing episodes of increased aggression against herself to perceive certain conduct was necessary in her self-defense, *even though another person not suffering from such a condition might believe or behave differently.*" (emphasis added)).

32. *See* KRS 533.060(1):

When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted. If the person convicted claims to be exempt

exempted from KRS 439.3401 parole restrictions if the offender "come[s] within the definitions of KRS 503.050 and 533.060 ... as the victim of domestic violence and abuse ...."[33] While the majority dismisses the incongruity between its construction of KRS 439.3401(5) and the other provisions of the same act because it sees the meaning of the "with regard to ..." language as crystal clear—i.e., the legislature *could* treat violent offenders differently; the legislature *did* treat violent offenders differently; end of story[34]—I see the incongruity as strong evidence that the General Assembly did not intend for the "with regard to" language to operate as the majority interprets it. In particular, I see nothing approaching clear proof of the legislature's intent to allow *currently incarcerated* violent offenders to take advantage of a domestic violence exemption by demonstrating that they had been a victim of past acts of domestic violence at the hand of the person against whom they committed the violent offense, but deny the same opportunity to defendants convicted after July 15, 1992.

In *Commonwealth v. Colonial Stores*,[35] our predecessor court noted another rule of statutory construction: "Doubts in the construction of a penal statute will be resolved in favor of lenity and against a construction that would produce extremely harsh or incongruous results...."[36] In my opinion, today's majority's interpretation

---

from this statute because that person was the victim of domestic violence and abuse as defined in KRS 403.720, the trial judge shall conduct a hearing and make findings to determine the validity of the claim and applicability of this exemption. The findings of the court shall be noted in the final judgment.
*Id.*

**33.** KRS 439.3402(1) ("Any violent offender as defined in KRS 439.3401 who was convicted prior to July 14, 1992, who claims to come within the definitions of KRS 503.050 and 533.060 and the purview of this section as the victim of domestic violence and abuse may be exempt from KRS 439.3401 under the conditions set forth in this section.").

**34.** Or perhaps not *quite* the end of the story. The majority opinion also suggests a secondary rationale for its holding—that, regardless of the 1992 General Assembly's intent with respect to the "with regard to ..." language in KRS 439.3401(5), the 2000 General Assembly's amendments to KRS 439.3401 (adding the words "or probation" in two (2) other subsections) adopted a construction of the subsection (5) language suggested in *Springer v. Commonwealth*, Ky., 998 S.W.2d 439, 457 (1999). Of course, this analysis not only overlooks the difficulty of ascertaining legislative intent from a *subsequent* legislative enactment by a *different* General Assembly, *see Guffey v. Cann*, Ky., 766 S.W.2d 55 (1989); *Green River District Health Dept. v. Wigginton*, Ky., 764 S.W.2d 475 (1989), but also is inconsistent with the majority's belief that KRS 439.3401(5) is clear on its face and can be interpreted without resorting to rules of statutory construction. Additionally, while the 2000 Amendments to KRS 439.3401(2) & (3) have eliminated one incongruity that, under *Springer* and today's majority's interpretation of KRS 439.3401(5), apparently existed between 1992 and 2000 (certain individuals were apparently eligible for probation, but, if not probated, could not be paroled until they served fifty percent (50%) (and later, eighty-five percent (85%)) of their sentences) substantial incongruities remain. In my opinion, the other provisions of the legislative act creating the KRS 439.3401(5) domestic violence exemption provide the strongest evidence of the General Assembly's intent. The General Assembly's 2000 Amendments to KRS 439.3401(2) & (3) do not demonstrate that the legislature endorsed the *Springer* interpretation, and, in the process, turned its back to the concerns that initially prompted this legislation.

**35.** Ky., 350 S.W.2d 465 (1961).

**36.** *Id.* at 467. *See also Kentucky Indus. Utility Customers, Inc. v. Kentucky Utilities Co.*, Ky., 983 S.W.2d 493, 500 (1998) ("A statute should not be interpreted to bring about an absurd or unreasonable result.").

of the scope of KRS 439.3401(5) produces severely incongruous results.

While the incongruities, standing alone, would lead me to seriously question the majority's construction, I am deeply troubled that, as a practical matter, the majority's interpretation of KRS 439.3401(5) all-but-erases the exemption's availability. The legislation which added the KRS 439.3401(5) domestic violence exemption progressively recognized that victims of domestic violence and abuse who commit crimes against their abusers should be treated differently from other offenders because the abuse they have suffered is relevant to their culpability. By limiting the KRS 430.3401(5) domestic violence exemption to situations where a domestic violence victim commits a violent offense contemporaneously with the abusive situation, this Court interprets the exemption virtually out of existence. If someone is committing acts of domestic violence against a person, and that person kills or seriously physically injures his or her attacker, he or she will seldom be a violent offender because he or she is likely either:

(1) privileged to act in self-protection;[37] or, even if the domestic violence victim's belief in his or her need to use deadly force—or the amount of force necessary—is erroneous, (2) guilty of some crime other than a violent offense.[38] The majority's construction of KRS 439.3401(5) thus strips it of any real meaning, and I find that construction erroneous.

For the reasons outlined above, I believe the trial court properly interpreted the KRS 439.3401(5) exemption for victims of domestic violence to include past victims of domestic violence, and I would affirm the trial court's determination that Appellee qualifies for the KRS 439.4301(5) exemption.

STUMBO, J., joins this dissent.

---

**37.** *See* KRS 503.050(1) & (2).

**38.** E.g., in a homicide case, Second Degree Manslaughter or Reckless Homicide and, in an assault case, Second or Fourth Degree Assault. *See* KRS 503.120; *Commonwealth v. Hager,* Ky., 41 S.W.3d 828, 841–844 (2001).