Donna GAINES, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2013–SC–000545–MR.

Supreme Court of Kentucky.

Aug. 21, 2014.

162

Linda Roberts Horsman, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Donna Gaines, was charged with murder, abuse of a corpse, and tampering with physical evidence in connection with the shooting death of her husband, Greg Sigler, in late November of 2009. She was also charged with several counts of forgery because in the months following Sigler's death, Appellant cashed several of his social security checks by forging his endorsement on the checks. Eventually, Appellant pled guilty to those charges in the Ohio Circuit Court and was sentenced to a total of thirty years' imprisonment.

Appellant does not challenge the determination of her guilt or the term of imprisonment fixed by the Court. Instead, she argues that the trial court committed two errors in its decisions regarding her sentencing, each arising out of Appellant's claim that she was a victim of domestic violence at the hands of Sigler. First, Appellant contends that the trial court erroneously found that she did not qualify for the earlier parole eligibility that KRS 439.3401(5) provides when a violent offender, such as Appellant, was herself a victim of domestic violence "with regard to" the violent crime she committed. Second, Appellant claims that the trial court erred in its conclusion that Appellant's status as a victim of domestic violence did not render her eligible for probation, and, consequently, she argues the trial court erred by failing to consider probation as a sentencing alternative. For the reasons stated below, we affirm the judgment of the Ohio Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A brief review of the facts underlying Appellant's conviction is necessary. Appellant met Greg Sigler in the summer of 2009 while Sigler was at her house working as a member of a half-way house community service crew. A romantic attachment developed between them, and within a few weeks they were married. Soon after the wedding, Sigler's excessive drinking became evident and he began exhibiting violent behavior directed at Appellant and her twelve-year old son. Appellant also discovered in the first few weeks of the marriage that Sigler had been diagnosed with schizophrenia and that he was taking medication for that condition.

After a violent confrontation in November 2009, Sigler and Appellant were each charged with assault. As a condition of his release on bail, Sigler moved out of the residence and was ordered to have no contact with Appellant. Despite the bail condition, the couple resumed their relationship. According to Appellant, as soon as Sigler returned to the residence on Friday, November 27, 2009, his violent behavior resumed. They fought through the weekend, but afterwards, Appellant believed

they had worked out their differences. On Monday afternoon however, Appellant was disappointed to discover that Sigler was packing his belongings and preparing to leave again. Appellant testified that Sigler had been drinking, that he had taken money from her bank account, and that he was planning to take her truck when he left.

According to Appellant, when she refused to let Sigler take the truck a physical altercation erupted outside the house over the truck keys. They fought until Sigler knocked Appellant to the ground. Angry and afraid, Appellant said she went into her house to retrieve a gun. She then went back outside where she shot and killed Sigler. After killing Sigler, Appellant used an all-terrain vehicle to drag his body to a secluded area where, over the next several days, she burned his body to ashes. She also retained several of his social security disability checks that arrived over the next few months, and cashed them by forging Sigler's endorsement.

Eventually, Appellant was charged with murder, abuse of a corpse, tampering with physical evidence, and multiple counts of forgery. She entered guilty pleas, consistent with a plea agreement, and an evidentiary hearing was held to determine if Appellant qualified as a victim of domestic violence, which under KRS 439.3401(5) would reduce her parole eligibility time in the event she was sentenced to prison. She also argues that being a victim of domestic violence would make her eligible for probation pursuant to KRS 533.060(1).

The evidence adduced at the hearing established the facts as set forth above, but it also disclosed that Appellant had offered a number of inconsistent versions of the event, including her claim on one occasion that the shooting was an accident. Significantly, Appellant ultimately admitted at the evidentiary hearing that she shot Sigler because he had stolen her money; because he was trying to take her truck from her; because he was leaving her alone and broke; and because it was important to her that she stand up for herself. She also testified to the effect that she had been abused as a child and that when she shot Sigler, it was like she was shooting her father.

Based upon the evidence presented, the trial court made the following written finding of fact:

> The court conducted a hearing on July 12, 2013, as to whether the Defendant is entitled to the exemption as a violent offender under KRS 533.060[sic],[1] and the Court heard testimony of witnesses and the arguments of counsel. This Court finds that the Defendant had been subjected to domestic violence and abuse by the victim during her marriage to the victim. However, this Court *cannot find the required nexus between the domestic abuse perpetrated by the victim upon the Defendant and the murder of the victim.* This Court further finds that *the murder of the victim by the Defendant did not occur as the result of domestic violence and abuse.* Therefore, this Court finds that the Defendant is not entitled to the exemption as a violent offender under KRS 533.060[sic]. (emphasis added).

Appellant now challenges these findings.

## II. KRS 439.3401(5): THE VICTIM OF DOMESTIC VIOLENCE EXCEPTION TO VIOLENT OFFENDER PAROLE ELIGIBILITY STATUS

We first consider whether the trial court erred in its refusal to grant Appellant the

---

1. KRS 439.3401 is Kentucky's violent offender statute, and the victim of domestic violence exemption referred to by the trial court is provided by KRS 439.4301(5), not KRS 533.060.

benefit of the domestic violence exception contained in KRS 439.3401(5). Generally, for a felony offense committed after December 3, 1980, a defendant sentenced to imprisonment for two years or more, up to and including thirty-nine years, is eligible for release on parole after serving twenty percent of the imposed sentence. *See* 501 KAR 1:030 § 3(b). However, there are exceptions to the general rule, and one exception is found in KRS 439.3401.

Under KRS 439.3401(1), a "violent offender" is a person who has been convicted of a capital offense; a Class A felony; or Class B felony involving the death of the victim or serious physical injury to a victim. KRS 439.3401(3)(a) provides that "[a] violent offender who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed."

Murder is classified by KRS 507.020(2) as a "capital offense," and Appellant was sentenced to a term of years for that offense. Upon application of that section, Appellant would not become eligible for parole after serving twenty percent of her sentence, but would instead be subject as a "violent offender" to the eighty-five percent rule for parole eligibility.

However, KRS 439.3401(5) carves out an exemption from the eighty-five percent rule, and thus a reversion to the twenty percent rule is provided to a violent offender "who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060

*with regard to the offenses involving the death of the victim or serious physical injury to the victim.*" (emphasis added).

KRS 533.060(1), in turn, provides in pertinent part:

When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, *except* when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720[ [2] ] against either the person convicted or a family member.

Pursuant to the statutory text of KRS 439.3401(5), to qualify for the exemption, the violent offender must have been a victim of domestic violence or abuse and that violence or abuse must also have occurred "with regard to" the crime committed by the violent offender claiming the exemption.

Upon analyzing the first prong of this test in *Commonwealth v. Anderson,* 934 S.W.2d 276, 278 (Ky.1996), we held that KRS 439.3401 [3] "requires that the evidence believed by the fact-finder be sufficient that the defendant was more likely than not to have been a victim of domestic violence," thereby adopting a preponder-

---

**2.** KRS 403.720(1) defines violence as follows: " 'Domestic violence and abuse' means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family

members or members of an unmarried couple[.]"

**3.** At the time we rendered *Commonwealth v. Anderson,* the language of KRS 439.3401(5) was codified as KRS 439.3401(4).

ance of the evidence standard to evidentiary determinations under this statute. In *Anderson,* we predictably adopted the clearly-erroneous standard as our standard of review for that factual determination. *Id.* Here, the trial court's finding that Appellant had been a victim of domestic violence was supported by multiple sources of evidence, and so we cannot conclude it was erroneous.[4]

With regard to the second prong of the test—whether domestic violence or abuse endured by a defendant occurred "with regard to the offenses" committed by that defendant—we have construed the statutory text to mean that the domestic violence exemption of KRS 439.3401(5) applies only when the domestic violence or abuse was "*involved*" in the offense committed by the violent offender. *See Springer v. Commonwealth,* 998 S.W.2d 439, 457 (Ky. 1999). In *Commonwealth v. Vincent,* 70 S.W.3d 422 (Ky.2002), we further explained the evidence must establish "some connection or relationship between the domestic violence suffered by the defendant and the underlying offense committed by the defendant.". *Id.* at 424. We further concluded that "a prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption of KRS 439.3401(5).". *Id.* at 425.

▉ Following the evidentiary hearing, the trial court entered this finding: "[T]his Court cannot find the required nexus between the domestic abuse perpetrated by the victim upon [Appellant] and the murder of the victim." The trial court further found that "the murder of the victim by [Appellant] did not occur as the result of domestic violence and abuse." While neither the statutory language, "with regard to," nor our constructions of it in *Springer* ("*involved*") and *Vincent* ("some connection or relationship"), require a direct and immediate causal connection between the act of domestic violence and the murder, they do require something more than a mere temporal proximity between the domestic abuse and the murder. Upon application of these standards, we cannot conclude that the trial court's findings were clearly erroneous.

▉ As the trial court found, during their brief and tumultuous marriage Appellant was a victim of domestic violence committed by Sigler. But Appellant's own explanation of the event certainly attenuated the killing of Sigler from the violence she had suffered. She testified that part of her reason for shooting Sigler was that he was leaving her. She was not, therefore a victim of abuse who saw violence as the only way to avoid her abuser.

She also acknowledged that she shot Sigler to keep him from taking her vehicle and because he had stolen money from her; both motives being more indicative of her willingness to aggressively defend her domain than a reaction to the violent behavior of a person she had known for only a few months. Similarly, her decision to express her ability to "stand up" for herself in this violent fashion does not convincingly cast her in the role of the victim. She was not trying to escape Sigler's domination and abuse; to the contrary, he was leaving her physically unharmed. We certainly allow that a psychological analysis of the situation might give rise to a theory

---

4. A factual finding is not clearly erroneous if it is "supported by substantial evidence," i.e., supported by "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [persons]." *Owens–Corning Fiberglas Corporation v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998).

explaining how Appellant was peculiarly affected by Sigler's offensive conduct so as to impel her to violence, but the trial court would not have been obliged to accept it in light of the circumstances so clearly established. Moreover, the trial court was not required to ignore the events that followed Sigler's murder in determining whether the abuse Appellant sustained played a role in her decision to kill Sigler. Accordingly, we affirm its decision that Appellant was not entitled to the victim-of-domestic-violence exception to the parole eligibility requirement for violent offenders established by KRS 439.3401.

## III. KRS 533.060(1): THE VICTIM OF DOMESTIC VIOLENCE EXCEPTION TO VIOLENT OFFENDER ELIGIBILITY FOR PROBATION

Appellant also contends that the trial court erroneously declined to consider probation as an alternative sentence to imprisonment. In support of her position Appellant cites to our decision in *Knox v. Commonwealth,* 361 S.W.3d 891, 896 (Ky. 2012) (noting that a trial court is required to follow all of its statutory duties when imposing a sentence), and the mandate of KRS 533.010(2) that "[b]efore imposition of a sentence of imprisonment, the court

shall consider probation[.]" She argues that the case must therefore be remanded for a new sentencing trial so that the trial court may give proper consideration to her request for probation.

Both parties argue the merits of KRS 533.060(1), which on the one hand provides that a criminal defendant who has been convicted of a Class A, B, or C felony, and the commission of the offense involved the use of a [firearm], "shall not be eligible for probation," but on the other hand provides that the prohibition on probation shall not apply to a defendant who "establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse[.]"

■ At the outset, we conclude that KRS 533.060 is wholly inapplicable; neither its prohibition of probation, nor its domestic violence exception to that prohibition applies because the statute's plain language limits itself to crimes classified as Class A, Class B, and Class C felonies committed with a firearm. As noted above, murder falls into none of those classes; rather, it is classified as a "capital offense" by KRS 507.020(2).[5]

---

5. Appellant and the Commonwealth each make substantial arguments about whether murder, as a "capital offense," is also a Class A felony when there is no effort to impose the death penalty on the defendant (or other sentence requiring a finding of aggravating factors). Appellant notes that we have rendered opinions in which murder has been discussed as if it was a Class–A felony. For example, in *Springer, supra,* and *Commonwealth v. Terrell,* 2008 WL 466157 (Ky. February 21, 2008), we held that a defendant convicted of murder was entitled to sentencing under the exemption of KRS 533.060 for being a victim of domestic violence. However, we also note that in those cases the Commonwealth did not challenge the applicability of KRS 533.060 in a murder case. Moreover, in *Berry v. Commonwealth,* 782 S.W.2d 625 (Ky.1990) (over-

ruled on other grounds by *Chestnut v. Commonwealth,* 250 S.W.3d 288 (Ky.2008)), we expressly rejected the Commonwealth's argument, motivated by a desire to bring the charge within the persistent felony offender enhancement provisions, that murder was a Class A felony. We said:

This Court holds that the trial court committed reversible error in imposing an enhanced sentence under the persistent felony offender statute because murder is a capital crime and not subject to such enhancement. KRS 507.020(2) states that murder is a capital offense. The language of the statute is clear and unambiguous."
*Id.* at 626.
We see no reason to reconsider that sound determination. The legislature has clearly

Further, for two additional reasons we conclude that Appellant is not entitled to a new sentencing hearing before a court willing to consider a sentence of probation. First, KRS 439.3401(3)(a) is conclusive: "A violent offender who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed." In the preceding section of this opinion, we affirmed the trial court's finding that Appellant was not exempted from KRS 439.3401's eighty-five percent parole eligibility rule by the victim-of-domestic-violence exemption contained in KRS 439.3401(5). We are, therefore, also bound by that same analysis here, and so are constrained to conclude that Appellant is not exempt from the prohibition of probation eligibility contained in KRS 439.3401(3)(a).

Second, as we pointed out in *Knox*, KRS 533.010(2) requires the sentencing judge to consider granting probation, probation with an alternative sentencing plan, or conditional discharge "before imposition of a sentence of imprisonment." The statute further commands that the judge must grant probation:

> unless the court is of the opinion that imprisonment is necessary for protection of the public because:
>
> (a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime;
>
> (b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

> (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

We note upon review of the final judgment entered by the trial court that, even if we had concluded that the trial judge erred in refusing even to *consider* granting probation, the judge nonetheless expressly made all of the factual findings that would justify his refusal to *grant* probation. The judge found that if Appellant was released on probation or conditional discharge, there was a substantial risk that she would commit another crime; he also found that Appellant was in need of treatment most effectively provided in a correctional institution; and finally, he found that probation or conditional discharge would unduly depreciate the seriousness of Appellant's crimes. Consequently, it is manifest that upon a proper consideration of probation as a permissible sentencing option, based upon express findings of fact, the trial court would have been bound to reject that sentencing alternative and impose a sentence of imprisonment.

If the trial court's failure to consider probation was error, we cannot escape the conclusion that the error was harmless because upon application of the facts, Appellant was found to be unsuited for that sentencing alternative. We therefore conclude that Appellant is not entitled to a new sentencing hearing.

### IV. CONCLUSION

Based upon the foregoing analysis of the issues presented, the judgment of the Ohio Circuit Court is affirmed.

MINTON, C.J., ABRAMSON, CUNNINGHAM, KELLER and NOBLE, JJ., concur. SCOTT, J., does not agree with the portion of Section III of the

and unambiguously classified murder as a    capital offense, not a Class A felony.

majority's opinion which states that murder is not covered by KRS 533.060(1) as a Class A felony; however, he agrees with the remainder of the majority's logic under that section and, therefore, concurs in result.