RENDERED: OCTOBER 29, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0231-DG

COMMONWEALTH OF KENTUCKY          APPELLANT


ON REVIEW FROM COURT OF APPEALS

V.          NO. 2017-CA-1978

FAYETTE CIRCUIT COURT NO. 14-CR-00768


MICHAEL WAYNE CROWE          APPELLEE


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

Michael Wayne Crowe was indicted by a Fayette County grand jury on the charge of murder for the death of his wife, Felicia Walker. He pleaded guilty to the amended charge of manslaughter in the first degree, a Class B felony, in exchange for the Commonwealth's recommendation of fifteen years to serve. After pleading guilty but before he was sentenced by the trial court, Crowe moved the trial court to classify him as a domestic violence victim pursuant to Kentucky Revised Statute ("KRS") 439.3401(5). This classification would reduce his parole eligibility from 85% of his sentence to 20% of his sentence. The trial court denied Crowe's motion. The Court of Appeals reversed the trial court, and we granted the Commonwealth's motion for discretionary review. Having

thoroughly reviewed the record and the arguments of the parties, we hereby affirm the Court of Appeals.

## I.  BACKGROUND

On May 2, 2014, Crowe rented a motel room for two nights to share with Walker. The couple drank alcohol and argued during the evening. Around 10:00 p.m., the front desk manager at the motel received a phone call from a female in Crowe's room, presumably Walker, who sounded upset and asked the manager to place a call for her and to leave that person a message to call her back at the motel. Approximately fifteen minutes later, the front desk manager called the room back, and a male, presumably Crowe, answered the phone. The male stated that everything was okay and that the female was upset because of a recent death in her family.

The next morning, after seeing a male leave the room carrying a trash can, the motel manager entered the room and found Walker's body. Detective Dawn Dunn responded to the motel to investigate the death. Upon entering the room, she did not see any signs of a struggle. The pillows were stacked on the bed, and there were a few small drops of blood on the bed. Detective Dunn called the number that was given to the front desk manager by the female the night before and found that it belonged to Dennis, Walker's sister's husband. Dennis provided Dunn with Crowe's mother's contact information. Dunn then spoke to Crowe's mother who advised that although Crowe lived with her, she had not seen him since he left for work the day before. Crowe's car was found

abandoned in Versailles, and on May 5, he was found in a wooded area near the car.

On May 6, Crowe voluntarily went to the police station for an interview. He advised Dunn that he and Walker lived with his mother, and they had rented the motel room to get away for a couple of days. He told Dunn that while in the motel room, he and Walker argued. He stated that Walker lunged toward him and bit him near his nipple. Dunn testified that on the date of the interview, Crowe still had an open wound where Walker had bitten him. She photographed this wound as well as other bruises on his arms and back. Crowe then stated that Walker fell asleep on the couch and he went to sleep in the bed. Crowe stated that when he woke up the next morning he realized Walker was dead and believed she had overdosed on pills. Crowe was not arrested at that time, as Walker's cause of death had not yet been determined.

As part of her investigation, Dunn examined the pillow cases from the motel room and found imprints of what appeared to be a person's eyes, nose, and mouth. Dunn compared the imprints from the pillow to a photograph of Walker's face and believed that they matched. The medical examiner eventually identified Walker's cause of death as asphyxiation. The medical examiner's report included a toxicology report which showed a high level of alcohol in Walker's body but no drugs.

Dunn then interviewed Crowe again. This time, Crowe told Dunn that during the argument between him and Walker, Walker admitted to having an affair with Dennis, the same person whose phone number was given to the

motel desk manager on the night of Walker's death. Crowe told Dunn that after Walker lunged at him and bit him, Crowe held the pillow over her face until he thought she passed out. He then went to sleep on the bed. When he woke up and realized she was dead, he panicked and fled.

Based on this information, Crowe was charged with murder for the death of Walker. He eventually entered into a plea agreement with the Commonwealth whereby he pleaded guilty to an amended charge of manslaughter in the first degree for a recommendation of fifteen years to serve. After entering his guilty plea, Crowe moved the trial court to classify him as a domestic violence victim pursuant to KRS 439.3401(5). This classification would reduce his parole eligibility from 85% of his sentence to 20% of his sentence.

The trial court held a hearing on Crowe's motion at which Crowe's sister, mother, father, and father's paramour testified on behalf of Crowe. These witnesses, aside from his mother, testified that although they never saw physical altercations between Crowe and Walker, Crowe would tell them about the fights and they would sometimes see scratches or other evidence of the fights on him. They also testified that they witnessed multiple verbal altercations between the couple. Crowe's mother testified, in addition to what the others stated, that on one occasion she saw Walker slap, hit, and punch Crowe during an argument. Crowe's sister testified that she saw multiple scratches and bruises, as well as a large bite mark on Crowe a few days after Walker's death. Finally, she testified that on the night of Walker's death, Crowe

called and left her a voicemail, she believed accidentally, and she heard some of the conversation between Crowe and Walker. During that conversation, she heard Walker tell Crowe that Walker was going to have sex with someone else. Crowe's sister believed Walker was referring to Dennis. Detective Dunn testified on behalf of the Commonwealth. Dunn's testimony consisted primarily of the facts as we have previously described them.

At the conclusion of the hearing, the trial court made oral findings of fact and conclusions of law, denying Crowe's motion. The trial court did not reduce its findings and conclusions to writing. Crowe appealed the trial court's ruling to the Court of Appeals, which vacated the trial court's order and remanded for the trial court to make written findings as to the validity of Crowe's claim. *Crowe v. Commonwealth*, No. 2016-CA-000134-MR, 2017 WL 3129204 (Ky. App. July 21, 2017). On remand, the trial court reviewed the prior hearing and entered an amended order and final judgment again denying Crowe's motion. The trial court found

> that Crowe had been subjected to ongoing verbal abuse and occasional domestic violence during his entire marriage to the victim. However, this Court cannot find the required nexus between the domestic abuse perpetrated by the victim upon Crowe during the marriage, including the day of the incident and death of Walker, and the smothering of Walker by Crowe as charged. This Court further finds that the smothering of Walker by Crowe did not occur **as the result of** domestic violence and abuse. Rather, this Court finds that Crowe killed Walker because of her admission to him during the argument that she had been having an affair and engaging in sexual relations with "Dennis" during their marriage.

(Emphasis added). Crowe again appealed the trial court's judgment to the Court of Appeals. The Court of Appeals reversed the trial court holding that

5

"Crowe had successfully connected the physical and verbal domestic violence to the crime he committed" and that the trial court "erred in ruling otherwise." The Commonwealth moved this Court for discretionary review, which we granted.

## II. ANALYSIS

Generally, for a felony offense committed after December 3, 1980, a defendant sentenced to imprisonment for two years or more, up to and including thirty-nine years, is eligible for release on parole after serving twenty percent of the imposed sentence. *See* 501 KAR 1:030 § 3(c). However, there are exceptions to the general rule, and one exception is found in KRS 439.3401, the "violent offender statute."

KRS 439.3401(1), a "violent offender" includes, but is not limited to, a person who has been convicted of a Class B felony involving the death of the victim. KRS 439.3401(3)(a) provides that "[a] violent offender who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed."

Crowe pleaded guilty to manslaughter in the first degree, a Class B felony involving the death of the victim, thereby making him a violent offender under KRS 439.3401(1)(c). Therefore, under KRS 439.3401(3)(a) he would be ineligible for parole until he has served 85% of his sentence. However, KRS 439.3401(5) carves out an exemption from the eighty-five percent rule, and thus a reversion to the twenty percent rule. This exemption is provided to a

6

violent offender "who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with **regard to the offenses involving the death of the victim** or serious physical injury to the victim." (emphasis added).

KRS 533.060(1), in turn, provides in pertinent part:

When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted.

Finally, KRS 403.720(1) defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple."

In summary, "[p]ursuant to the statutory text of KRS 439.3401(5), to qualify for the exemption, the violent offender must have been a victim of domestic violence or abuse and that violence or abuse must also have occurred 'with regard to' the crime committed by the violent offender claiming the exemption." *Gaines v. Commonwealth*, 439 S.W.3d 160, 164 (Ky. 2014). This Court has construed that test as consisting of two distinct prongs. *See id.* at 164-65. The first prong is whether the defendant is a victim of domestic

7

violence. *Id.* at 164. The second prong is whether "domestic violence or abuse endured by a defendant occurred 'with regard to the offenses' committed by that defendant." *Id.* at 165. *Gaines* provides a concise summary of how we have interpreted the second prong:

> we have construed the statutory text to mean that the domestic violence exemption of KRS 439.3401(5) applies only when the domestic violence or abuse was "involved" in the offense committed by the violent offender. *See Springer v. Commonwealth*, 998 S.W.2d 439, 457 (Ky. 1999). In *Commonwealth v. Vincent*, 70 S.W.3d 422 (Ky. 2002), we further explained the evidence must establish "some connection or relationship between the domestic violence suffered by the defendant and the underlying offense committed by the defendant."[] *Id.* at 424. We further concluded that "a prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption of KRS 439.3401(5)."[] *Id.* at 425.

*Id.* We then went on to clarify,

> While neither the statutory language, "with regard to," nor our constructions of it in *Springer* ("involved") and *Vincent* ("some connection or relationship"), require a direct and immediate causal connection between the act of domestic violence and the murder, they do require something more than a mere temporal proximity between the domestic abuse and the murder.

*Id.*

Crowe's case is before this Court to determine the correct standard of appellate review of a trial court's findings of fact and conclusions of law as to whether a defendant is entitled to the domestic violence victim exemption to violent offender parole eligibility under KRS 439.3401(5). Both trial and appellate courts, despite their best efforts, have struggled with the appropriate designation of findings of fact and conclusions of law. In the area of domestic

8

violence, this becomes even more difficult and, in turn, may impact the appellate standard of review. After determining the correct standard of review, we must **then** apply it to the trial court's denial of Crowe's motion in this case.

A. **Whether a defendant is a victim of domestic violence or abuse is a factual finding that is reviewed for clear error. Whether the domestic violence or abuse endured by a defendant occurred with regard to the offenses committed by that defendant is a mixed question of law and fact and is reviewed de novo.**

The Commonwealth argues that an appellate court's review of a trial court's determination of whether a defendant is entitled to the domestic violence exemption under KRS 439.3401(5) is limited to clear error. Crowe, on the other hand, argues that a trial court's determination of whether a defendant is a victim of domestic violence is a factual finding that should be reviewed for clear error but that the trial court's determination of whether he or she is a victim of domestic violence **with regard to** the offense with which he has been convicted is a legal question, or at a minimum a mixed question of law and fact, and should be reviewed de novo. Crowe analogizes review of the trial court's determination in the instant case to review of a trial court's ruling on a motion to suppress. In that instance, we first "defer to the trial court's factual findings if they are supported by substantial evidence and only review such findings for clear error." *Bond v. Commonwealth*, 453 S.W.3d 729, 732 (Ky. 2015) (citations omitted). Then, "when the findings of fact are supported by substantial evidence, we review the court's application of the law to those facts de novo." *Id.* (citation omitted).

9

Although this Court has not yet been asked directly to determine the proper standard of review in these types of cases, we have previously addressed it. The Commonwealth cites to this Court's decision in *Commonwealth v. Anderson*, 934 S.W.2d 276 (Ky. 1996), for the clearly erroneous standard of review. In that case, we noted that the trial court concluded the defendant had not established she was a victim of domestic violence and had correctly based that finding upon a preponderance of the evidence standard. *Id.* at 278. We then stated, "The ruling of the trial court was not clearly erroneous." *Id.* at 278-79. However, in that case, we were only reviewing the trial court's determination regarding the first prong of the test – whether the defendant was a victim of domestic violence. Because the trial court found the defendant was not a victim of domestic violence, it never determined whether she was a victim of domestic violence with regard to the offense with which she was convicted. Therefore, we never reviewed the trial court's finding on that second prong.

Admittedly, in both *Gaines v. Commonwealth*, 439 S.W.3d 160, and *Roberts v. Commonwealth*, 599 S.W.3d 841, 858 (Ky. 2020), we used the clearly erroneous standard in reviewing the trial court's findings that the defendants in those cases were not victims of domestic violence in regard to the offenses for which they were convicted. However, in neither of those cases was the standard of review squarely placed in front of this Court as an issue to be decided as it is in this case.

After thoroughly reviewing the statutes and applicable case law, we hold that a two-part standard of review akin to that used in the review of a trial

10

court's decision on a suppression motion is the most appropriate standard by which appellate courts should review a trial court's determination under KRS 439.3401(5). The trial court's determination of whether the defendant is a victim of domestic violence is a factual finding that appellate courts should review for clear error. If the trial court's factual findings on this first prong are supported by substantial evidence, those factual findings shall be deemed conclusive. The second prong, whether the domestic violence or abuse endured by the defendant occurred "with regard to the offenses" committed by that defendant, is a mixed question of law and fact. As such, the trial court's determinations on this prong are reviewed de novo. We note, however, appellate courts shall "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

**B. The trial court's factual findings were supported by substantial evidence, but it erred in determining Crowe was not a victim of domestic violence with regard to the manslaughter.**

We now turn to the case before us to determine if the trial court erred in finding Crowe was ineligible for the domestic violence exemption under KRS 439.3401(5). We first review the trial court's factual finding that Crowe was a victim of domestic violence for clear error. We hold that the trial court did not err in finding Crowe was a victim of domestic violence, as its finding was supported by substantial evidence.

Crowe's father, sister, and father's girlfriend all testified about an extensive history of domestic violence perpetrated by Walker on Crowe. They

11

each testified about instances in which they witnessed Walker verbally abuse Crowe. They also testified Crowe described to them many instances in which Walker was physically aggressive towards him. Further, they each testified that following those instances, they often saw scratches, red marks, or bruises on Crowe. They all asserted that Walker was the primary aggressor in these situations.

Crowe's mother testified to much of the same as Crowe's other family members, but additionally testified to witnessing an incident in which Walker physically attacked Crowe. She stated that she saw Walker hit Crowe with an open hand multiple times which progressed to hitting him with a closed fist upwards of over ten times. She testified that the physical violence was instigated by Walker and that Crowe did not fight back.

Detective Dunn testified to Crowe's version of events on the night of Walker's death as relayed to her during two different police interviews. During the interview in which Crowe admitted to smothering Walker, Crowe explained that he and Walker were arguing. Walker admitted to him that she was having an affair with Dennis. During the argument, she lunged at him and bit him next to his nipple. She also scratched him on his face, neck, and body. Crowe told Dunn that he then grabbed a pillow, put it against Walker's face, and pushed her off of him. He then held her on the ground with the pillow over her face until she stopped fighting back. He believed she had passed out.

Although Crowe did not testify at the hearing on his motion regarding the domestic violence exemption, he did admit to committing the crime during his

guilty plea colloquy and explained the events that occurred. He stated that he and Walker got into an argument. She attacked him and bit him. He tried to restrain her to keep her from attacking him anymore. He put a pillow over her mouth to keep her from biting him, as she had bit him on his arms, chest, and back. He believed she had passed out but realized in the morning that she was deceased.

Based on our thorough review of the full record, the trial court did not clearly err in finding Crowe was a victim of domestic violence or abuse by a preponderance of the evidence. We now turn to whether the trial court erred in determining Crowe was not a victim of domestic violence with regard to the manslaughter. We engage in a de novo review and hold that the trial court erred in this determination.

The trial court's written order stated that it could not find "the required nexus between the domestic abuse perpetrated by the victim upon Crowe during the marriage, including the day of the incident and death of Walker, and the smothering of Walker by Crowe as charged." The trial court went on to find that "the smothering of Walker by Crowe did not occur **as the result of** the domestic violence and abuse." (emphasis added.) Instead, the trial court found that "Crowe killed Walker because of her admission to him during the argument that she had been having an affair and engaging in sexual relations with 'Dennis' during their marriage."

Although we held in *Gaines* that "something more than a mere temporal proximity between the domestic abuse and the murder" was required, we also

made clear that "a direct and immediate causal connection between the act of domestic violence and the murder" was **not** required. 439 S.W.3d at 165. We reaffirm that holding today and make a clear statement that an act of domestic violence need not **cause** the commission of the crime in order for the defendant to be eligible for the domestic violence exemption under KRS 439.3401(5). That is to say, the defendant need not have committed the crime **because of** the domestic violence nor must the crime be **the result of** the domestic violence for the defendant to be eligible for the domestic violence exemption under KRS 439.3401(5). The statute and our caselaw interpreting that statute only require that the domestic violence be involved in the commission of the crime or that there be a relationship or a connection between the two. *See Springer v. Commonwealth*, 998 S.W.2d 439, 457 (Ky. 1999) ("involved"); *Commonwealth v. Vincent*, 70 S.W.3d 422, 424 (Ky. 2002) ("relationship").

Turning to the evidence in Crowe's case, we hold that Crowe was a victim of domestic violence in regard to the commission of the manslaughter of Walker. We first note that the only living person who knows what happened in the motel room on the night of Walker's death is Crowe. Yet he chose not to testify at the hearing on his motion to classify him as a domestic violence victim pursuant to KRS 439.3401(5). His testimony about the night in question would have been both highly relevant and incredibly helpful to the question before the trial court.

Nevertheless, we have already detailed most of the evidence that supports our holding. Members of Crowe's family testified to the history of

14

domestic violence perpetrated by Walker on Crowe. Crowe explained during his plea colloquy what happened in the motel room on the night of Walker's death. He stated that the couple was arguing, and Walker physically attacked him. She scratched and bit him on various parts of his body, including a serious bite wound on his chest. He held a pillow over Walker's face to subdue her attack which resulted in her suffocation and death. Crowe made a similar statement to Dunn during his second police interview. Finally, Crowe's injuries were still visible days after Walker's attack, as evidenced by photos introduced at the hearing on his motion.

Although this evidence is not overwhelming, it was sufficient to satisfy Crowe's burden of proving by a preponderance of the evidence that he was a victim of domestic violence in regard to the manslaughter of Walker, especially considering the Commonwealth put on little evidence to controvert his version of events or undermine his credibility. As such, the trial court erred in finding otherwise.

### III.    CONCLUSION

Accordingly, and for the foregoing reasons, we affirm the Court of Appeals.

Minton, C.J.; Hughes, Lambert, VanMeter and Wright, JJ., concur. Nickell, J., not sitting.

15

COUNSEL FOR APPELLANT:

Daniel J. Cameron
Attorney General of Kentucky

Leilani Karin Marie Martin
Assistant Attorney General


COUNSEL FOR APPELLEE:

Kathleen Kallaher Schmidt
Assistant Public Advocate