RENDERED: DECEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1402-MR

SAVANNAH B. TURNER                                          APPELLANT

v.       APPEAL FROM WASHINGTON CIRCUIT COURT
         HONORABLE SAMUEL TODD SPALDING, JUDGE
         ACTION NO. 23-CR-00004-002

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Savannah B. Turner has appealed from the October 31, 2024, order of the Washington Circuit Court denying her motion seeking a finding that she was entitled to the domestic violence exemption regarding parole eligibility pursuant to Kentucky's violent offender statute, Kentucky Revised Statutes (KRS) 439.3401. We affirm.

The consequences of the tragic death of Turner's infant son from a skull fracture and traumatic brain injury underlie the present appeal. Days after his injury, Turner and her former husband, James Dalton Jeffries, took their four-week-old child to a local hospital. He was transferred to Norton Children's Hospital in Louisville, where he died 13 days later on November 26, 2022, due to his significant head injury.

Turner and Jeffries were both indicted by the Washington County Grand Jury in January 2023 on charges of murder.[1] On April 24, 2024, Jeffries entered a guilty plea to an amended charge of first-degree manslaughter, as well as other charges, including the PFO II charge, and received an enhanced 30-year sentence. In September of that year, Turner moved the court to enter a guilty plea to an amended charge of first-degree manslaughter (a Class B felony, *see* KRS 507.030(2)) and a drug trafficking charge, with the criminal abuse, wanton endangerment, and drug paraphernalia charges dismissed. Pursuant to the terms of the agreement, Turner would receive a 10-year sentence for the manslaughter charge and a five-year sentence for the trafficking charge, to be served consecutively for a total of 15 years' imprisonment. The court accepted Turner's plea and scheduled a sentencing hearing for the following month. The court also

---

[1] Both were also indicted on various drug, criminal abuse, and wanton endangerment charges, and Jeffries was also charged with being a second-degree Persistent Felony Offender (PFO II).

noted that Turner reserved the right to claim the domestic violence exemption regarding her eligibility for parole, which would allow the manslaughter charge to carry 20% parole eligibility rather than 85%; that issue had not been part of the guilty plea negotiation.

Prior to the sentencing hearing, Turner filed a motion requesting that the court determine her status as a victim of domestic violence. She argued that she was a victim of domestic violence at the hands of Jeffries, that she felt unable to defend the child, and that she therefore had been a victim of domestic violence with regard to her act of permitting the death of her child.

The circuit court held the sentencing hearing on October 23, 2024, at which time Turner presented testimony in support of her motion. She testified about Jeffries's anger issues, specifically after the child was born, and that she was always scared of him. She alleged Jeffries had threatened to kill her if she took the child to the hospital and that he had thrown her down and held a gun to her head. The Commonwealth called Detective James Ford from the Kentucky State Police post in Columbia to testify. He knew of at least three detailed interviews with Turner and had also reviewed her Facebook and text messages. Detective Ford stated that in neither the interviews nor the messages had Turner told anyone about the above allegations. Detective Ford did admit that he initially thought that there was domestic violence between the parties based upon an incident at the hospital

when Jeffries was asked to leave while Turner was giving birth. At the conclusion of the testimony, arguments from counsel, and after hearing victim impact statements, the court orally ruled that the domestic violence exemption did not apply in this case because the statute did not extend to a third party. The court went on to honor the plea agreement as a fair compromise and sentenced Turner in accordance with that agreement. It entered the final judgment the day of the hearing.

The court entered its findings of fact, conclusions of law, and order as to Turner's motion on October 31, 2024, in which it formally denied Turner's request to apply the domestic violence exemption to her parole eligibility based upon the standard articulated in *Commonwealth v. Crowe*, 610 S.W.3d 218, 224-25 (Ky. 2020). While it did find that Turner had been the victim of domestic violence, the court did not conclude that the conduct occurred with regard to the offenses because the victim was not the perpetrator of the domestic violence, but rather a third party. The court held that *Shelton v. Commonwealth*, 992 S.W.2d 849 (Ky. App. 1998), was dispositive and held that the exemption did not extend to an action against a third party. Turner has appealed this single issue.[2]

---

[2] The Commonwealth correctly argued that Turner's brief fails to comply with Kentucky Rules of Appellate Procedure 32(A)(4) in that it does not contain a statement of preservation for the issue she raised on appeal. Because the record is only one volume and the motion and associated hearings are easily located in the record, we decline to impose any sanction.

In *Crowe*, *supra*, the Supreme Court of Kentucky detailed the statutes and caselaw creating and interpreting the domestic violence exemption. Beginning with the statutory and regulatory basis, the Court explained:[3]

> Generally, for a felony offense committed after December 3, 1980, a defendant sentenced to imprisonment for two years or more, up to and including thirty-nine years, is eligible for release on parole after serving twenty percent of the imposed sentence. *See* 501 [Kentucky Administrative Regulations] KAR 1:030 § 3(c). However, there are exceptions to the general rule, and one exception is found in KRS 439.3401, the "violent offender statute."
>
> [Pursuant to] KRS 439.3401(1), a "violent offender" includes, but is not limited to, a person who has been convicted of a Class B felony involving the death of the victim. KRS 439.3401(3)(a) provides that "[a] violent offender who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed."
>
> Crowe pleaded guilty to manslaughter in the first degree, a Class B felony involving the death of the victim, thereby making him a violent offender under KRS 439.3401(1)(c). Therefore, under KRS 439.3401(3)(a) he would be ineligible for parole until he has served 85% of his sentence. However, KRS 439.3401(5) carves out an exemption from the eighty-five percent rule, and thus a reversion to the twenty

---

[3] Some of the statutes discussed in *Crowe* have been amended in the years since that case was rendered, which has resulted in the renumbering (or re-lettering) of the statutes and some changes in the statutory language itself. While we are not indicating these changes in the language in *Crowe* as set forth herein, we will refer to the version of the statutes in effect on the date of Turner's offense, November 10-13, 2022, when applicable.

percent rule. This exemption is provided to a violent offender "who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with **regard to the offenses involving the death of the victim** or serious physical injury to the victim." (emphasis added).

*Crowe*, 610 S.W.3d at 222.

The *Crowe* Court then discussed the caselaw interpreting these statutes and specifically addressed the two prongs a defendant must establish to be entitled to the exemption:

> In summary, "[p]ursuant to the statutory text of KRS 439.3401(5), to qualify for the exemption, the violent offender must have been a victim of domestic violence or abuse and that violence or abuse must also have occurred 'with regard to' the crime committed by the violent offender claiming the exemption." *Gaines v. Commonwealth*, 439 S.W.3d 160, 164 (Ky. 2014). This Court has construed that test as consisting of two distinct prongs. *See id*. at 164-65. The first prong is whether the defendant is a victim of domestic violence. *Id*. at 164. The second prong is whether "domestic violence or abuse endured by a defendant occurred 'with regard to the offenses' committed by that defendant." *Id*. at 165. *Gaines* provides a concise summary of how we have interpreted the second prong:
>
>> we have construed the statutory text to mean that the domestic violence exemption of KRS 439.3401(5) applies only when the domestic violence or abuse was "involved" in the offense committed by the violent offender. *See Springer v. Commonwealth*, 998 S.W.2d 439, 457 (Ky. 1999). In *Commonwealth v. Vincent*, 70 S.W.3d 422 (Ky. 2002), we further explained the

-6-

evidence must establish "some connection or relationship between the domestic violence suffered by the defendant and the underlying offense committed by the defendant." [ ] *Id*. at 424. We further concluded that "a prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption of KRS 439.3401(5)." [ ] *Id*. at 425.

*Id*. We then went on to clarify,

While neither the statutory language, "with regard to," nor our constructions of it in Springer ("involved") and Vincent ("some connection or relationship"), require a direct and immediate causal connection between the act of domestic violence and the murder, they do require something more than a mere temporal proximity between the domestic abuse and the murder.

*Id*.

*Crowe*, 610 S.W.3d at 223.

Finally, the *Crowe* Court set forth the applicable standard of appellate review:

[W]e hold that a two-part standard of review akin to that used in the review of a trial court's decision on a suppression motion is the most appropriate standard by which appellate courts should review a trial court's determination under KRS 439.3401(5). The trial court's determination of whether the defendant is a victim of domestic violence is a factual finding that appellate

> courts should review for clear error. If the trial court's factual findings on this first prong are supported by substantial evidence, those factual findings shall be deemed conclusive. The second prong, whether the domestic violence or abuse endured by the defendant occurred "with regard to the offenses" committed by that defendant, is a mixed question of law and fact. As such, the trial court's determinations on this prong are reviewed de novo. We note, however, appellate courts shall "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

*Crowe*, 610 S.W.3d at 224-25. Because the circuit court's holding on the second prong is the only issue raised in this appeal, we shall apply a *de novo* standard of review.

Turner argues that the plain language of KRS 439.3401(5) (now (6)) does not require the crime victim to have been the domestic abuser, while the Commonwealth contends that the victim had to have been the domestic abuser, not a third party, in order for it to apply. We agree with the Commonwealth.

Our decision hinges on the interpretation and interplay of multiple statutes.

> General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy. The power granted by a statute is not limited to that which is expressly conferred but also includes that which is necessary to accomplish the things which are expressly authorized. In interpreting a statute, this Court must be guided by the intent of the

-8-

legislature in enacting the law. No single word or sentence is determinative, but the statute as a whole must be considered. In order to effectuate the legislative intent, words may be supplied, omitted, substituted or modified. The purpose is to give effect to the intent of the legislature. KRS 446.080 provides that all statutes shall be liberally construed to carry out the intent of the legislature.

*Cnty. of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky. 2002) (citations omitted).

KRS 439.3401(5) (2022 version) states, in relevant part, that it "shall not apply to a person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim or serious physical injury to the victim." KRS 533.060(1), in turn, provides:

When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted. If the person convicted claims to be exempt from this statute because that person was the victim of domestic violence and abuse as defined in KRS 403.720, the trial judge shall conduct a hearing and make findings

-9-

> to determine the validity of the claim and applicability of this exemption. The findings of the court shall be noted in the final judgment.

We also note that "[t]he person's status as a victim of domestic violence is not dependent on the presence or absence of a weapon[,]" despite the reference to the use of a weapon in KRS 533.060. *Holland v. Commonwealth*, 192 S.W.3d 433, 436-37 (Ky. App. 2005).

In the present case, Turner argues that the domestic violence exemption does not require the victim of the crime to be the perpetrator of the domestic violence. However, we agree with the Commonwealth that this theory has been rejected, as this Court set forth in *Shelton*, *supra*.

> Appellant asserts that the language "with regard to the offenses involving the death of the victim" is broad enough to encompass a situation in which a person, acting under emotions incited by an immediately preceding act of domestic violence, commits an act of violence against a third person. She claims that the violent encounter with Rice on the morning of Stewart's death caused her to kill Stewart while acting under extreme emotional disturbance; thus she was a victim of domestic violence "with regard" to the crime committed.

> Appellant's reasoning is based on an incomplete reading of the statute. . . .

> . . . .

> The exception defined in KRS 533.060 is applicable when the victim of the crime is the perpetrator of the domestic violence. We do not believe the legislature intended KRS 439.3401(4) to be interpreted in

-10-

the expansive manner appellant suggests. As the Commonwealth notes, such an all-encompassing interpretation of the domestic violence victim exception could lead to the absurdity of benefitting the domestic abuser who kills his victim, allowing the abuser to later claim that the crime was committed "with regard" to the domestic abuse. The statutes provide leniency for the domestic violence victim who strikes back at an abuser by removing the "violent offender" status from the offense and allowing that the offender be eligible for parole as specified in KRS 439.340. KRS 439.3402(8). They do not, however, afford that leniency to a victim who takes action against a third party.

*Shelton*, 992 S.W.2d at 850-51. Turner did not address the application of *Shelton* in her brief at all, and we note that she argued below that *Crowe* controlled essentially because it was rendered later. *Crowe*, however, did not involve the death of a third party; it concerned the death of the domestic abuser.

Based upon our reading and interpretation of the various statutes and associated caselaw, we hold that Turner is not entitled to the domestic violence exemption for parole eligibility. Turner has failed to establish the second prong of the test – that the crime was committed with regard to the abuse – because the victim in this case was the child, a third party, and not the domestic abuser. Therefore, the circuit court did not commit any error in ruling that she is not entitled to the benefit of that status for parole consideration.

For the foregoing reasons, the order of the Washington Circuit Court is affirmed.

-11-

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Dawn L. McCauley<br>Lebanon, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Ryan D. Mosley<br>Assistant Solicitor General<br>Frankfort, Kentucky |