RENDERED: JUNE 23, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1349-MR

MELZENA LULABELL MOORE                                      APPELLANT

v.                 APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE GREGORY A. LAY, JUDGE
ACTION NO. 20-CR-00103

COMMONWEALTH OF KENTUCKY                            APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Melzena Lulabell Moore (Moore) pleaded guilty to manslaughter in the first degree while under an extreme emotional disturbance and received a sentence of eighteen (18) years' imprisonment. When she moved the trial court for application of the domestic violence exemption to the violent offender statute, her motion was denied. She now appeals that determination. We reverse and remand to the trial court as detailed below.

## FACTS

Moore was involved in a romantic relationship with the decedent, Raymond Jackson (Jackson), beginning in 2017.  They resided together and, at first, their relationship appeared to be happy.  Moore testified though, that as time passed, Jackson became abusive, telling Moore that he "owned" her and beating her when she did not do what he ordered her to do, which could include providing sexual services to drug dealers in exchange for crack.  When she refused his commands, he beat her to unconsciousness, tied her to the bed, and allowed the dealers to rape her.

Moore, like many victims of domestic violence, would leave Jackson, only to be convinced to return to him.  On one occasion, she left and went to her mother's home, but Jackson appeared and promised things would be better if she would "come home."  And she did go home, again.

Moore testified that she had managed to leave in May of 2020 and was at her mother's home when Jackson asked her to again come home, which she did.  When she arrived, Jackson told her that the night before he had been partying at his home with several people, including a woman named Brittany.  He confessed to Moore that he had raped Brittany and was planning to do so again that night.  He entreated her to help him kill Brittany so she could not report the rape.  He

instructed Moore that while he was raping Brittany, she should come in the room and slit Brittany's throat with a weapon he provided.

Moore further testified that on this night, she entered the room as instructed and saw Jackson raping Brittany. Brittany was in severe pain and, after Moore realized she could not go through with harming Brittany, she sat down on the bed next to her. Brittany begged Moore to take her place, and Moore agreed. Jackson began raping Moore instead.

Once Jackson fell asleep, Brittany and Moore left the home together and a friend of Brittany's picked them up. The friend was driving Brittany to the hospital to receive care for the injuries inflicted by Jackson and Moore asked to be dropped off. She walked to her cousin's home. Moore asked her cousin for bullets and then she walked to her mother's home and got a gun. She then started walking back to Jackson's home.

According to her testimony at the hearing, Moore didn't intend to kill Jackson, just to scare him. However, when she arrived at the home, he asked where Brittany was and, after learning that Brittany had gone to the hospital, he became enraged, realizing he was likely going to be charged with rape. He punched Moore in the face and turned away from her. Moore, fearful that he might be looking for a weapon, took the gun out and pointed it at him. He advanced

towards her and grabbed the barrel, pushing her back. She fired. Jackson was killed.

In addition to Moore's testimony at the hearing, Dr. Walter DeKeseredy, a Ph.D. in sociology and a specialist in domestic violence, provided expert testimony. In particular, he testified regarding his objective testing of Moore. The test he performed on her, one created by another expert in domestic violence at Johns Hopkins, was designed to predict whether the victim was likely to die due to domestic violence. A score of 18 or higher indicates a likelihood of such end. Moore scored 31.

Jackson's sister also testified. She stated that Jackson had been diagnosed with schizophrenia and post-traumatic stress disorder and when he did not take his medicine, he did not function well. She had to take care of paying his bills and buying his groceries and such. Jackson had previous problems with neighbors, but his sister denied ever witnessing any violence between her brother and Moore. An officer investigating the shooting testified that he noticed no injuries to Moore's face, despite her contention Jackson had hit her.

The trial court entered an order denying the domestic violence exception to Moore. Though the court found that she was a victim of domestic violence by Jackson, the court found that she was not being victimized at the time she shot Jackson, so the court believed the exception could not be applied. The

court found that because there was no corroboration of Moore's testimony that Jackson was subjecting her to violence at the time of the shooting, she was not entitled to the exception.

The court also noted that Moore walked voluntarily to the home, armed with a loaded gun. The court believed that this fact also required it to find that the exception was not warranted as it had found her actions were motivated by something other than domestic violence. The court held Moore's actions thus did not meet the "with regard to" standard of the statute, which has been interpreted by this Court and the Kentucky Supreme Court to require some nexus between the violent behavior and domestic violence.

We have reviewed the testimony, the arguments of the parties, and the law. We reverse the trial court and remand this matter for entry of an order finding Moore is entitled to the exception.

## STANDARD OF REVIEW

A trial court must apply a preponderance of the evidence standard in determining whether a person is a victim of domestic violence for purposes of Kentucky Revised Statute (KRS) 439.3401(5). The standard "merely requires that the evidence believed by the fact-finder be sufficient that the defendant was more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). As to whether domestic violence had

a part in the actions of the victim who now stands accused of a crime, the court

must determine if the offense occurred "with regard to the offenses." The review

of that determination is *de novo*, as such is a mixed question of law and fact.

> After thoroughly reviewing the statutes and applicable case law, we hold that a two-part standard of review akin to that used in the review of a trial court's decision on a suppression motion is the most appropriate standard by which appellate courts should review a trial court's determination under KRS 439.3401(5). The trial court's determination of whether the defendant is a victim of domestic violence is a factual finding that appellate courts should review for clear error. If the trial court's factual findings on this first prong are supported by substantial evidence, those factual findings shall be deemed conclusive. The second prong, whether the domestic violence or abuse endured by the defendant occurred "with regard to the offenses" committed by that defendant, is a mixed question of law and fact. As such, the trial court's determinations on this prong are reviewed de novo.

*Commonwealth v. Crowe*, 610 S.W.3d 218, 224-25 (Ky. 2020).

## ANALYSIS

Manslaughter in the first degree is a "violent offense" as it is a Class

B felony involving the death of the victim. KRS 439.3401(1)(c). The

consequence of this designation is that anyone convicted of the crime, such as

Appellant, cannot be released on probation or parole until having served at least

85% of the sentence imposed. KRS 439.3401(3)(a).

-6-

However, subsection (5) of that same statute reads: "This section shall not apply to a person who has been determined by a court to have been a victim of domestic violence or abuse subject to KRS 533.060 **with regard to** the offenses involving the death of the victim . . . ." *Id.* (emphasis added).

KRS 533.060 states:

(1) When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted. If the person convicted claims to be exempt from this statute because that person was the victim of domestic violence and abuse as defined in KRS 403.720, the trial judge shall conduct a hearing and make findings to determine the validity of the claim and applicability of this exemption. The findings of the court shall be noted in the final judgment.

Thus, the violent offender statute "provides leniency for the domestic violence victim who strikes back at an abuser by removing the 'violent offender' status from the offense and allowing the offender to be eligible for parole as specified in KRS

-7-

439.340." *Holland v. Commonwealth*, 192 S.W.3d 433, 436 (Ky. App. 2005) (citing *Shelton v. Commonwealth*, 992 S.W.2d 849, 851 (Ky. App. 1998)).

For the exemption to apply and allow a defendant to be considered for parole after serving 20% of their sentence, rather than the 85% required of those who are not entitled to the exception, the Supreme Court has interpreted KRS 439.3401(5) as requiring a defendant prove first that he or she is or has been a victim of domestic violence. If that burden is met by a preponderance of the evidence, then the court must determine whether the offense occurred "with regard to" the domestic violence suffered by the accused.

In *Commonwealth v. Anderson*, 934 S.W.2d at 278, the Supreme Court held that KRS 439.3401(5) "requires that the evidence believed by the fact-finder be sufficient that the defendant was more likely than not to have been a victim of domestic violence." In the instant case, the trial court found that Moore was a victim of domestic violence. The trial court cited the testimony of Marvin Johnson as particularly persuasive on this question. Johnson was a friend of both Moore and Jackson. Johnson lived down the road from Jackson. In 2019, Moore and Jackson were at Marvin Johnson's home for a party. At one point, Jackson became angry at Moore and dragged her by her hair down the hallway. Johnson intervened and Moore hid in the utility room until Jackson left Johnson's home.

The trial court, however, faced a more difficult determination concerning the second question before it – whether domestic violence occurred "with regard to" the offense which the victim of the domestic violence has been found guilty of. The meaning of the phrase "with regard to" represents an interpretation of the statutory language in KRS 439.3401(5). The Supreme Court has held that there must be some nexus between the offense and domestic violence.

> With regard to the second prong of the test – whether domestic violence or abuse endured by a defendant occurred "with regard to the offenses" committed by that defendant – we have construed the statutory text to mean that the domestic violence exemption of KRS 439.3401(5) applies only when the domestic violence or abuse was "involved" in the offense committed by the violent offender. *See Springer v. Commonwealth*, 998 S.W.2d 439, 457 (Ky. 1999). In *Commonwealth v. Vincent*, 70 S.W.3d 422 (Ky. 2002), we further explained the evidence must establish "some connection or relationship between the domestic violence suffered by the defendant and the underlying offense committed by the defendant." *Id.* at 424. We further concluded that "a prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption of KRS 439.3401(5)." *Id.* at 425.

*Gaines v. Commonwealth*, 439 S.W.3d 160, 165 (Ky. 2014).

There must be "some connection or relationship between the domestic violence suffered by the defendant and the underlying offense committed by the defendant." *Commonwealth v. Vincent*, 70 S.W.3d 422, 424 (Ky. 2002). In

*Holland*, this Court held, "*Vincent* makes no more requirement than that the evidence connect the crime and the abuse." 192 S.W.3d at 438. In that opinion, we cautioned against an "over-technical reading of the statutes and case law which do not promote the purpose of the legislative enactment at issue." *Id*. at 435. The *Holland* Court explained the rationale behind this:

> The General Assembly thus obviously intended to provide leniency to (domestic violence) victims who could not establish self-defense. The class of defendants raising allegations of domestic abuse under these statutes [KRS 533.060(1) and KRS 439.3401(5)] 'is provided multiple opportunities to raise the abuse in mitigation of their criminal conduct.' *See generally*, Sue McClure, Note, *The Battered Woman Syndrome and the Kentucky Criminal Justice System: Abuse Excuse or Legitimate Mitigation?*, 85 Ky. L.J. 169 (1996-1997). We agree that these statutes are intended to give domestic violence victims additional opportunities to secure leniency beyond the defenses they might raise at trial.

*Id.* at 437.

The trial court held it could not find the required connection or relationship between the shooting of Jackson and the domestic violence it had found he perpetrated on Moore. The court cited the lack of any physical evidence that violence had occurred at the time of the shooting. But such finding is inapposite of our holdings that there need not be contemporaneous domestic violence in order to find that there was a connection between the shooting and the history of domestic violence. We disagree with the trial court's conclusion.

-10-

The trial court dismissed the testimony of Dr. DeKeseredy because Dr. DeKeseredy accepted Moore's statements to him to be truthful. We find that his testimony concerning the effects of domestic violence upon its victims to be relevant and the trial court's dismissal of all of Dr. DeKeseredy's testimony led, in part, to the wrong conclusion. These effects of domestic violence on victims can and do lead to the type of action taken here by Moore, according to the testimony of the expert. The defense called him as an expert to testify about a matter of scientific inquiry, and to dismiss all of his testimony was erroneous.

Dr. DeKeseredy testified that he had spent his career of over thirty-five years studying violence against women. He explained that it was not at all unusual for an abused person to leave and return to their abuser multiple times, particularly when, like Moore, the abused had been told she would be killed if she left. He added that women are six times more likely to be killed by their abuser upon returning to the home, as Moore had the night of the shooting. Dr. DeKeseredy testified that given the history of abuse between Jackson and Moore, and the fact she had left several times and had just returned after leaving at the time of the shooting, she was in danger of being killed by Jackson at the time of the shooting. The trial court completely disregarded the expert testimony of Dr. DeKeseredy. We hold that the testimony was relevant and the trial court erred in

-11-

dismissing it. We find it persuasive and that it furthers a finding that the offense here was a result of domestic violence suffered by Moore.[1]

Further, we agree with Moore that it appears that the trial court conflated the exemption for domestic violence victims from the implications of being a "violent offender" and the defense of self-protection. The trial court's citing the fact that Moore voluntarily returned to the home where she had been victimized, and finding that the act of returning to a dangerous situation against her own best interests was motivated by something other than domestic violence, underscores the necessity for expert opinion concerning the effects of long-term victimization at the hands of a domestic abuser.

Those who claim self-protection are not seeking to have an exemption to the consequences of being considered a "violent offender," as is Moore. Rather, if one is found to have acted in self-protection under KRS 503.050 there is no need for an exception as that person would be guilty of no crime. This was recognized by this Court in the *Holland* case, *supra.* 192 S.W.3d 433. So, while returning to the scene armed with a gun might be relevant to a determination of whether one

---

[1] *See State v. Jackson*, 2020-Ohio-4914, ¶ 63, 160 N.E.3d 454, 467-68 (2020) ("Nevertheless, expert opinion 'may not be *arbitrarily* ignored, and some reason must be objectively present for ignoring expert opinion testimony.'" (Emphasis sic.) [*State v. White*, 118 Ohio St. 3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 71 (2008)], *quoting United States v. Hall*, 583 F.2d 1288, 1294 (5th Cir. 1978); *State v. Brown*, 5 Ohio St. 3d 133, 134-135, 449 N.E.2d 449 (1983) . . . . And while the trial court as the trier of fact may disregard expert opinion, it may not arbitrarily exclude, without justification, expert opinions without indicating why the opinions were not considered.").

could properly have been found to have acted in self-protection, such action is not instructive in determining if a person was a victim of domestic violence or acted "with regard to" domestic violence when she committed the act for which she presently stands accused. *See Baker v. Commonwealth*, 677 S.W.2d 876, 880-81 (Ky. 1984) (Leibson, J., concurring), *overruled on other grounds by Shannon v. Commonwealth*, 767 S.W.2d 548 (Ky. 1988).[2]

In *Holland*, the accused had set fire to her abuser while he napped in a recliner and was not actively abusing her. She claimed both self-protection as an absolute defense to the crimes with which she was charged, as well as seeking the exception to being considered a "violent offender" after the jury was not persuaded by the self-protection claim. The trial court denied her the application of the exception, even after finding she was a victim of domestic violence, as the trial court did in the present case. This Court reversed that holding.

> Appellant argues that she clearly showed that she was a victim of domestic violence and the court took judicial notice of that. Furthermore, she testified at trial that L.J. was abusing her when she set fire to him. The Commonwealth argues that the trial court properly ruled against the exception since the jury did not acquit appellant on her self-protection defense. As the amicus brief aptly points out, however, defendants who are

---

[2] "If anything, the accused was delusional, but self-protection depends on a belief, reasonable or unreasonable, that self-protection is necessary at the time, and the appellant's delusions (if any) were not with regard to the need for immediate self-protection but with regard to future self-protection. Therefore the accused was not entitled under the facts of this case to an instruction on self-protection, nor to an instruction on reckless homicide in the event the jury believed he acted in self-protection, but recklessly." 667 S.W.2d at 880-81 (Leibson, J., concurring).

acquitted have no need of the probation and parole exclusions afforded to domestic violence victims by the General Assembly. The General Assembly thus obviously intended to provide leniency to victims who could not establish self-defense. The class of defendants raising allegations of domestic abuse under these statutes "is provided multiple opportunities to raise the abuse in mitigation of their criminal conduct." *See generally*, Sue McClure, Note, *The Battered Woman Syndrome and the Kentucky Criminal Justice System: Abuse Excuse or Legitimate Mitigation?*, 85 Ky. L.J. 169 (1996-1997). We agree that these statutes are intended to give domestic violence victims additional opportunities to secure leniency beyond the defenses they might raise at trial. Thus, the jury verdict is not conclusive of the inquiry of whether a defendant can establish that she was a victim of domestic violence.

192 S.W.3d at 437.

Further, in this case, the trial court also failed to note that it accepted a plea to manslaughter in the first degree under an extreme emotional disturbance.[3]

---

[3] Extreme emotional disturbance is a successor to the "old common law concept of 'heat of passion[.]'" *Driver v. Commonwealth*, 361 S.W.3d 877, 887 (Ky. 2012). It is defined as

> a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

> *McClellan* [*v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986).]

*Hargroves v. Commonwealth*, 615 S.W.3d 1, 6-7 (Ky. 2021).

The trigger for the emotional disturbance in this case could only be domestic violence.[4] Either Moore was triggered when she was again victimized at Jackson's hands or she was not. But having held that she was suffering from an extreme emotional disturbance at the time of the shooting, with domestic violence being the only possible trigger, the trial court's holding that she was not entitled to the exemption as a victim of domestic violence cannot be logically explained.

While it may be true that the Kentucky Rules of Criminal Procedure do not require that a trial court ensure that there is a factual basis before accepting a guilty plea,[5] the fact that the trial court accepted the plea to manslaughter under an extreme emotional disturbance, along with the trial court's tacit acknowledgement that Moore was a victim of domestic violence by Jackson, should certainly be considered by this Court. We find that the trial court's

---

[4] To prove adequately extreme emotional disturbance, a defendant must offer evidence that he "suffered a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from an impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan*, 715 S.W.2d at 468-69. Extreme emotional disturbance may have its roots in the common law concept of heat of passion, but it long ago outgrew the stricture of that historic principle. Our jurisprudence now recognizes that "it is possible for *any event, or even words*, to arouse extreme mental or emotional disturbance." *Holland*, 466 S.W.3d at 503-04. While what constitutes the triggering event may be broadly construed, its impact on the defendant is not. The event must be so dramatic as to render the mind temporarily uncontrollable and provoke "an explosion of violence." *Luna v. Commonwealth*, 460 S.W.3d 851, 883 (Ky. 2015).

[5] "Notably, Kentucky Rules of Criminal Procedure (RCr) 8.08, which governs pleas, does not expressly contain that requirement that a trial court ascertain a factual basis before accepting a guilty plea." *Chapman v. Commonwealth*, 265 S.W.3d 156, 183 (Ky. 2007), *as corrected* (Dec. 27, 2007), *as modified on denial of reh'g* (Aug. 21, 2008).

acceptance of the plea to manslaughter under extreme emotional disturbance, along with the trial court's finding that Moore was a victim of domestic violence by Jackson, renders erroneous his refusal to find that, as a matter of law, the exception to the violent offender sentencing should be applied in Moore's case. In exercising *de novo* review, we reverse the trial court on the second prong and hold that the trial court correctly found that Moore was a victim of domestic violence by a preponderance of the evidence, but incorrectly held that her actions were not the result of the domestic violence she suffered.

## CONCLUSION

We hold that the trial court erred when, after finding that Moore was a victim of domestic violence, it did not find that the shooting of her abuser was "with regard to" the abuse she had suffered. The court erred when it failed to give any credence to the expert testimony of a sociologist with over thirty-five years of study in violence against women. The court also erred in first accepting a plea to manslaughter in the first degree under an extreme emotional disturbance and then in finding that the shooting was not "with regard to" that same trigger, to wit, domestic violence. We reverse with instructions to enter an order finding Moore is entitled to the exclusion in KRS 439.3401(5) for victims of domestic violence from the parole restrictions for violent offenders.

GOODWINE, JUDGE, CONCURS.

McNEILL, JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

McNEILL, JUDGE, CONCURRING IN RESULT ONLY:  The majority correctly concludes that the domestic violence exemption to the violent offender statute applies.  Although we arrive at the same destination, I do so by a different path.  Therefore, I must respectfully concur in result only.

The relevant facts at issue here are:  1) Jackson subjected Moore to mental, emotional, and physical abuse; 2) on one particularly odious occasion detailed by the majority, Moore – and another of Jackson's victims – managed to obtain reprieve; and 3) during an attendant encounter, Moore shot and killed Jackson.  The proximity and preponderance of these events is sufficient to arrive at our destination without detour.  *See Commonwealth v. Crowe*, 610 S.W.3d 218, 226-27 (Ky. 2020).

Therefore, I concur in result only.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Kristin L. Conder
Frankfort, Kentucky